42 F.3d 1257
 Leonard HALVERSON; Kenneth Johnson; Rodney F. Archer;
Keith E. Bridge; Doug & Barbara McNair, Husband and Wife;
Mathew Blaine Mitchell, Individually and on Behalf of All
Others Similarly Situated; Dale & Patricia Howell, Husband
and Wife; J. Patrick & Selma Albee, Husband and Wife;
Glenn M. Anderson, Plaintiffs-Appellants,
v.
SKAGIT COUNTY, a Municipal Corporation; Diking Dist. No.
17, a Municipal Corporation; Diking Dist. No. 12;
Board of Commissioners of Diking
District No. 17, Defendants-Appellees.
 No. 93-35783.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 4, 1994.
Decided Dec. 12, 1994.
As Amended on Denial of Rehearing and Rejection of
Suggestion for Rehearing En Banc Feb. 9, 1995.
*
 
 Steve W. Berman, Hagens & Berman, Seattle, WA, for plaintiffs-appellants.
 William C. Smart, Keller Rohrback, Seattle, WA, Karen E. Vedder, Lane, Powell, Spears, Lubersky, Mount Vernon, WA, Warren John Gilbert, Mount Vernon, WA, for defendants-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before: LAY,** TROTT and T.G. NELSON, Circuit Judges.
 TROTT, Circuit Judge:
 
 OVERVIEW
 
 1
 Ninety residents of the Nookachamps area of Skagit County, Washington, whose homes and other property were damaged by flood waters of the Skagit River, filed suit under 42 U.S.C. Sec. 1983 against municipal corporations Skagit County and Diking Districts Nos. 12 and 17 (collectively the "County"), claiming the County deprived them of substantive and procedural due process of law. The plaintiffs allege the County pursued a policy of improving, maintaining and operating a system of levees and dikes which diverted additional flood waters into the Nookachamps area, damaging the plaintiffs' property. The plaintiffs appeal the district court's order granting the County's motion for summary judgment. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 Dikes and levees have long been part of an effort to control Skagit River flooding. Since 1955, a system of dikes and levees has been in place which protects the cities of Mount Vernon and Burlington, as well as agricultural areas further downstream. The County has participated in the maintenance, repair, and operation of this diking system.
 
 
 3
 The Nookachamps area is located upstream from Mount Vernon and across the river from Burlington. Although historically the Nookachamps area has been subject to flooding, Diking District No. 20, which partially encompasses the area, has chosen not to construct dikes along that portion of the Skagit River.
 
 
 4
 State law provides for the creation of diking districts by petition of the local residents. Once established, the diking districts are vested with the status of independent governmental bodies and have statutory authority to construct and maintain dikes. See Wash.Rev.Code tit. 85, 86. Funding for the repair and maintenance of the defendants' diking system is provided, in part, by federal and state agencies; the agencies require any improvement or maintenance to be in accordance with approved specifications. See, e.g., 33 C.F.R. Sec. 208.10(a)(2); Wash.Rev.Code Sec. 86.16.010.
 
 
 5
 The Skagit County Board of Commissioners ("County Commissioners") acts as liaison between the federal and state agencies and the diking districts. The County Commissioners also grant flood control monies to the diking districts and provide technical assistance. In 1980, the County formed a Flood Control Advisory Board ("Advisory Board") made up of area residents; several plaintiffs are long time members of the board. The Advisory Board reviews and makes recommendations concerning flood control projects. After receiving a recommendation from the Advisory Board and holding public hearings, the County Commissioners award grants and direct agency funding to flood control projects.
 
 
 6
 In 1979 the U.S. Army Corps of Engineers proposed improving the diking system to provide 100-year flood level protection. The environmental impact statement prepared in conjunction with the project indicated the improvement would divert additional flood waters into the Nookachamps area. Residents of the Nookachamps area organized opposition to the project, and it was eventually defeated by Skagit County voters.
 
 
 7
 After the voters rejected the 1979 project, the County Commissioners adopted a long term goal of maintaining and improving the diking system to provide for 25-year flood frequency protection. In 1989, the County approved a Comprehensive Flood Control Management Plan which adopted the 25-year level of protection as the standard for the maintenance and repair of the dikes. The Flood Control Plan was approved by the Washington Department of Ecology following public notice and hearings.
 
 
 8
 In November 1990, the Skagit River flooded twice, causing extensive damage to the plaintiffs' homes and other property. The plaintiffs filed suit in federal district court alleging the County's maintenance, improvement, and operation of the diking system diverted additional flood waters onto their property. The plaintiffs claimed that the County's policy and conduct vis a vis the diking system violated their procedural and substantive due process rights under the Fourteenth Amendment. The plaintiffs also asserted pendent state claims of inverse condemnation and strict liability, but they did not assert a federal takings claim. The district court granted the County's motion for summary judgment on the federal claims and declined to exercise jurisdiction over the pendent state claims.[1] The plaintiffs timely appealed.
 
 STANDARD OF REVIEW
 
 9
 A grant of summary judgment is reviewed de novo. Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). Id.DISCUSSION
 
 
 10
 To succeed on a claim asserted against a municipality under 42 U.S.C. Sec. 1983, the plaintiff must show that the alleged injury amounts to a constitutional deprivation, and that actions sanctioned by the municipality caused the constitutional violation. Jackson v. Gates, 975 F.2d 648, 654 (9th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 2996, 125 L.Ed.2d 690 (1993). We first consider whether the evidence demonstrates that the County caused the plaintiffs' alleged injuries.
 
 A. The County's Conduct
 
 11
 In challenging the County's decision to operate the diking system to provide for 25-year flood frequency protection, the plaintiffs allege the County pursued a policy of intentionally using plaintiffs' properties as an artificial flood water storage basin. The plaintiffs fail, however, to offer any admissible evidence supporting this allegation. The plaintiffs point to public documents disclosing the possible effects of proposed flood control projects, but, at most, these disclosures put the County, as well as the plaintiffs, on notice that during certain significant flood events the Nookachamps area might serve as a storage area for additional flood waters.
 
 
 12
 On the other hand, the affidavit of the plaintiffs' expert witness raises a genuine issue as to whether the County's operation of the diking system does in fact cause additional flooding of the Nookachamps area. Moreover, the plaintiffs' expert stated that under certain circumstances the additional flood waters could cause damage to property which would otherwise escape flooding.
 
 
 13
 Taken together, the plaintiffs offer sufficient evidence for a reasonable juror to find that the County's operation of the diking system could divert additional flood waters into the Nookachamps area and that the County was aware of this possibility. This showing satisfies the plaintiffs' burden at summary judgment on the question of whether the County's conduct caused the plaintiffs' alleged injuries. See id. We next consider whether the injuries the plaintiffs' claim amount to a deprivation of rights secured by the Constitution.
 
 B. The Procedural Due Process Claim
 
 14
 The due process clause of the Fourteenth Amendment protects individuals against governmental deprivations of life, liberty or property without due process of law. U.S. Const. amend. XIV, Sec. 1. The plaintiffs' claim in this regard does not deal with the substance of the challenged decisions, but with the process by which they were reached. The plaintiffs contend specifically that the County's failure "to notify plaintiffs that the levees would divert flood waters onto their properties during significant flood events" violated their due process rights.[2]
 
 
 15
 The due process clause does not prohibit every deprivation by the state of an individual's property. Only those deprivations carried out without due process are actionable under 42 U.S.C. Sec. 1983. "Ordinarily, due process of law requires [notice and] an opportunity for some kind of hearing prior to the deprivation of a significant property interest." Sinaloa Lake Owners Ass'n v. City of Simi Valley, 882 F.2d 1398, 1405 (9th Cir.1989) (internal quotations omitted), cert. denied, 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). However, "[w]hen the action complained of is legislative in nature, due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law." Sierra Lake Reserve v. City of Rocklin, 938 F.2d 951, 957 (9th Cir.1991), vacated, --- U.S. ----, 113 S.Ct. 31, 121 L.Ed.2d 4 (1992), on remand, 987 F.2d 662 (9th Cir.1993).
 
 
 16
 In seeking to define when a particular governmental action is "legislative in nature" we have eschewed the "formalistic distinctions between 'legislative' and 'adjudicatory' or 'administrative' government actions" and instead focused on the "character of the action, rather than its label...." Harris v. County of Riverside, 904 F.2d 497, 501 (9th Cir.1990). In doing so, our cases have determined also that governmental decisions which affect large areas and are not directed at one or a few individuals do not give rise to the constitutional procedural due process requirements of individual notice and hearing; general notice as provided by law is sufficient. See, e.g., Christensen v. Yolo County Bd. of Supervisors, 995 F.2d 161, 166 (9th Cir.1993) (no individual notice and hearing required where county zoning decision affects a large number of people and individuals are not targeted); Harris, 904 F.2d at 502 (no individual notice and hearing required where county decisions affect vast areas and large numbers of people); Cf. Bateson v. Geisse, 857 F.2d 1300, 1304 (9th Cir.1988) (absolute immunity attaches only to decisions that are legislative, those that apply to the general community).
 
 
 17
 In the present case, the district court correctly determined that the evidence conclusively demonstrates the legislative nature of the County's conduct about which the plaintiffs complain:
 
 
 18
 The design, construction, and improvement of the diking system entailed complex decisions and activities over a period of several decades. Many parts of the county, and the properties of thousands of people, were potentially affected at all times. The governmental undertakings were of general applicability and were carried out under state law grants of legislative authority.
 
 
 19
 Similarly, the evidence does not show the County directed the operation of the diking system at the specific properties of the plaintiffs. At most, the County knew that under certain circumstances the diking system could divert additional flood waters into the Nookachamps area. This information was disclosed, displayed, and discussed as mandated by law in public documents and during public proceedings. The plaintiffs had access to this information and "[t]heir rights [were] protected in the only way that they can be in a complex society, by their power, immediate or remote, over those who make the rule." Bi-Metallic Inv. Co. v. State Bd. of Equalization, 239 U.S. 441, 445, 36 S.Ct. 141, 142, 60 L.Ed. 372 (1915); see also Rogin v. Bensalem Township, 616 F.2d 680, 693-94 (3d Cir.1980), cert. denied, 450 U.S. 1029, 101 S.Ct. 1737, 68 L.Ed.2d 223 (1981).
 
 
 20
 On consideration of the relevant record, we conclude that the plaintiffs "received all the process due ... when the [County's] elected officials discharged their legislative responsibilities in the manner prescribed by law." Sierra Lake, 938 F.2d at 957. On this issue we cannot identify any genuine issues of material fact. Thus, the district court properly granted summary judgment on plaintiff's procedural due process claim.
 
 C. The Substantive Due Process Claim
 
 21
 "[T]he due process clause includes a substantive component which guards against arbitrary and capricious government action, even when the decision to take that action is made through procedures that are in themselves constitutionally adequate." Sinaloa Lake, 882 F.2d at 1407. Plaintiffs claim their substantive due process rights were violated by County conduct that was "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." Id. (internal quotations omitted). Specifically, the plaintiffs assert that the County's failure to compensate them for the use of their property prior to operating and maintaining a diking system which could divert water onto the plaintiffs' land was unreasonable and irrational.
 
 
 22
 Although at first blush it might appear the plaintiffs are attempting to dress-up a takings claim in substantive due process clothing, we have held that "[i]t is of no moment that this due process claim is based on factors that also form the basis of an alleged taking. Two or more legal theories may cover the same conduct...." Id. at 1404. And because substantive due process is violated at the moment the harm occurs, the plaintiffs' claim is ripe for adjudication despite their failure to first seek "just compensation" in state court. Bateson, 857 F.2d at 1303.
 
 
 23
 However, the protection from governmental action provided by substantive due process has most often been reserved for the vindication of fundamental rights. See Albright v. Oliver, --- U.S. ----, ----, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) ("The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."); Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989) (holding that it was improper to analyze an excessive force claim under substantive due process where a specific constitutional provision was applicable). "[T]he [Supreme] Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." Collins v. City of Harker Heights, 503 U.S. 115, ----, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992). Accordingly, where, as here, the plaintiffs rely on substantive due process to challenge governmental action that does not impinge on fundamental rights, "we do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 66 (9th Cir.1994). "Furthermore, this is not a takings case, in which we must balance the public interest supporting the government action against the severity of the private deprivation; in a substantive due process case such as this, our concern is with the rationality of a government action regardless of its impact." Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1238 (9th Cir.), cert. denied, --- U.S. ----, 115 S.Ct. 193, 130 L.Ed.2d 125 (1994).
 
 
 24
 Thus, in choosing to base their claim for compensation on an alleged violation of substantive due process, the plaintiffs shoulder a heavy burden. In order to survive the County's summary judgment motion, the plaintiffs must demonstrate the irrational nature of the County's actions by showing that the County "could have had no legitimate reason for its decision." Kawaoka, 17 F.3d at 1234 (internal quotations omitted). If it is "at least fairly debatable" that the County's conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process. Id. (internal quotations omitted); see also Sinaloa Lake, 882 F.2d at 1407 ("To establish a violation of substantive due process, the plaintiffs must prove that the government's action was 'clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.' " (quoting Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926))).
 
 
 25
 There is no question the County's participation in the maintenance and improvement of the diking system to provide 25-year flood level protection is a rational exercise of governmental authority. The diking system protects major population centers as well as substantial acreages of productive agricultural lands, and the County's maintenance of that system is directly related to the public health, safety and general welfare.
 
 
 26
 The plaintiffs assert, however, that it is the County's failure to compensate them prior to the flooding of their property that violates their constitutional rights.[3] But even if we assume there has been a taking,[4] the plaintiffs fail to explain why the substantive component of the due process clause requires the County to compensate the plaintiffs before appropriating their property. As we have observed in a different context, "[t]he Constitution ... does not require a state to provide ... pre-taking compensation." Cassettari v. County of Nevada, 824 F.2d 735, 738 (9th Cir.1987). The protection afforded the plaintiffs by substantive due process only guards against governmental action where "the interference with property rights was irrational or arbitrary." Bateson, 857 F.2d at 1303.
 
 
 27
 Because Washington state law provides a procedure for pursuing compensation through an inverse condemnation action,[5] there is nothing inherently irrational or arbitrary about the County's failure to provide plaintiffs with pre-taking compensation. Cf. Kauth v. Hartford Ins. Co., 852 F.2d 951, 958 (7th Cir.1988) (plaintiff failed to state a substantive due process claim where the only complaint was the deprivation of a state created property interest and a state remedy was available). Any damage to the plaintiffs that might have resulted from the County's maintenance of the diking system was speculative, remote, and dependent on a combination of specific factors during an actual flood event. The County could rationally decide the likelihood that their actions would "take" plaintiffs' property was so attenuated that an inverse condemnation action provided the preferable means of remedying any harm.[6] And in fact, the plaintiffs are independently pursuing such an action in state court.
 
 
 28
 The plaintiffs contend that our holding in Sinaloa Lake makes summary judgment on their substantive due process claim inappropriate. Their reliance on that case, however, is misplaced. Our task in Sinaloa Lake was to determine whether the plaintiffs' allegations were sufficient to withstand a motion for judgment on the pleadings. We concluded that the plaintiffs adequately alleged a substantive due process claim precisely because the "claim goes beyond the taking of plaintiffs' property; plaintiffs also claim that government officials abused the legitimate police powers entrusted to them."[7] 882 F.2d at 1410. In the instant case, although the plaintiffs complain about the lack of pre-taking compensation, they fail to offer any evidence showing the County abused its governmental powers or was engaged in any deception or ruse.
 
 
 29
 After considering the speculative nature of the plaintiffs' potential damage, we are convinced no rational trier of fact could find the County's decision to maintain and operate the diking system at a 25-year flood level protection without first compensating the plaintiffs was irrational or unreasonable. See Kawaoka, 17 F.3d at 1238 (collecting substantive due process cases to demonstrate the showing plaintiffs must make to survive summary judgment). The district court properly granted summary judgment on the substantive due process claim.
 
 CONCLUSION
 
 30
 The district court's order granting summary judgment for all defendants is AFFIRMED.
 
 
 
 *
 Judge Trott and Judge T.G. Nelson voted to reject the suggestion for rehearing en banc and Judge Lay so recommended
 
 
 **
 The Honorable Donald P. Lay, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 The plaintiffs subsequently filed these claims in state court
 
 
 [2]
 The parties strenuously argue the question of whether the plaintiffs' state created property rights include the right to be free from flood waters. In light of our decision today, we need not reach this issue
 
 
 [3]
 The County possesses the statutory authority to exercise the power of eminent domain. See Wash.Rev.Code Sec. 86.12.020
 
 
 [4]
 It is far from certain the County is required to compensate the plaintiffs. See Paulson v. County of Pierce, 99 Wash.2d 645, 664 P.2d 1202, 1207 (en banc) (holding that Washington state law "implicitly creates a class of landowners whose property might be damaged as a result of a county's flood control activities [but] precludes recovery by all those within the designated class."), appeal dismissed, 464 U.S. 957, 104 S.Ct. 386, 78 L.Ed.2d 331 (1983)
 
 
 [5]
 Article 1, Sec. 16 of the Washington Constitution prohibits the taking or damaging of private property without just compensation. The Washington Supreme Court has interpreted this provision as allowing a claimant to bring an inverse condemnation action to "recover the value of property which has been appropriated in fact, but with no formal exercise of the condemnation power." See Pierce v. Northeast Lake Washington Sewer and Water Dist., 123 Wash.2d 550, 870 P.2d 305, 309 (1994) (en banc) (internal quotations omitted)
 
 
 [6]
 We do not imply that the presence of a state procedure providing for inverse condemnation means a taking of private property will always square with the requirements of the Constitution. In some cases it will not. See, e.g., Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 n. 14, 105 S.Ct. 3108, 3121, n. 14, 87 L.Ed.2d 126 (1985) (discussing procedural due process cases)
 
 
 [7]
 The plaintiffs' allegations in Sinaloa Lake "paint[ed] a picture of government officials bent on destroying the [plaintiffs' property] for no legitimate reason, and determined to conceal that decision until the last possible moment to prevent plaintiffs from taking advantage of available legal processes." 882 F.2d at 1410