COVINGTON GREENS ASSOCIATES II, et al., Plaintiffs,

v.

COVINGTON WATER DISTRICT, et al., Defendants.

No. C96–145WD.

United States District Court, W.D. Washington.

June 26, 1996.

Charles E. Watts, Oseran, Hahn, Van Valin & Watts, P.S., Bellevue, WA, for Covington Greens Associates II and Daryl Connell.

Daniel Paul Mallove, Cozen & O'Connor, Seattle, WA, for Covington Water District, Lys L. Hornsby, and Jane Doe Hornsby.

Kameron C. Cayce, Kameron C. Cayce, P.S., Renton, WA, Daniel Paul Mallove, Cozen & O'Connor, for Thomas F. Delaat, Jane Doe Delaat, David R. Knight, Jane Doe Knight, George D. Holden, Jane Doe Holden, John T. Clark, Jane Doe Clark, Robert B. Eaton, Jane Doe Eaton, Judith L. Nelson and John Doe Nelson.

## ORDER GRANTING SUMMARY JUDGMENT ON FEDERAL CLAIMS AND REMANDING STATE CLAIMS TO STATE COURT

DWYER, District Judge.

This case was removed from King County Superior Court to this court on the basis that federal as well as state claims were pleaded by plaintiffs. Plaintiffs now move for partial summary judgment, and defendants cross-move for summary judgment dismissing the entire action. The matter has been fully briefed, and oral argument was heard in open court on June 20, 1996. For the reasons given in this order, the court grants defendants' motion for summary judgment on the federal claims; declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over the state claims; and remands the case (i.e., the state claims and defenses thereto) to state court.

The record shows the following without dispute:

Plaintiffs Covington Greens Associates II and Daryl Connell, its managing partner (collectively "CGA"), are developers of real estate. The dispute concerns the development of a residential area known as Elk Run Division V located in King County, Washington.

CGA has sued the Covington Water District, a municipal corporation, and its board members and general manager (collectively the "District"). CGA alleges that it was unlawfully denied water meters and connections to the Elk Run development.

The record shows that in February 1987 the District issued CGA a "certificate of water availability." The certificate was valid for one year and, although renewable, was never renewed by CGA. The District also agreed that CGA could construct a water system extension for the Elk Run development. The system extension, upon completion, would be subject to acceptance by the District. The system extension agreement did not address connection charges or when they would be assessed. The general policy in 1987 was that developers were charged for meters and connections when they were requested for each individual lot.

In 1988 the District's "conditions and standards," to which the extension agreement referred, were changed to require payment for meters and connections at the time the system extension was accepted. CGA, however, was "grandfathered" into the old policy allowing acceptance with payment to be made upon meter request.

In late 1993 and early 1994 the District encountered a water supply shortage. After several public meetings and much discussion, a moratorium on new water connections was adopted. In its final form, the moratorium was enacted in Resolution No. 1670 at a meeting held on August 3, 1994.

The moratorium created by Resolution No. 1670 limited the total number of new water connections in the district to 2,100. It also created two categories of users. "Committed" users were those who had paid for a connection but had not installed it, or who had a system extension project under construction. Such users were guaranteed a water connection as long as they remained in the "committed" category; they accounted for 1,432 of the available connections. All other users were deemed "uncommitted" and were to be sold the remaining meters, which numbered 268, on a first-come, first-served basis.

CGA, by virtue of its system extension construction, fell under the "committed" category when Resolution No. 1670 was enacted. On September 7, 1994, the District accepted CGA's extension. Although the 1988 conditions and standards required payment of connection charges as a condition of acceptance, this was not asked of CGA because its project had been "grandfathered."

Acceptance of the system extension was a separate matter from categorization of the user as "committed" or "uncommitted." In a letter dated January 9, 1995, the District advised CGA that it was no longer in the "committed" category. CGA had not paid for a connection, nor did it then have a system extension project under construction. The letter, however, offered CGA the chance to regain "committed" status as to any or all of the 45 lots in Elk Run Division V by paying the connection charges of $3,250 per lot by January 31, 1995. CGA let this opportunity pass.

On February 15, 1995, the District enacted Resolution No. 1710, which established a full moratorium on new connections except those already "committed." Since that time, CGA has been unable to obtain the connections sought.

 Summary judgment under Fed. R.Civ.P. 56 may be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An issue of material fact is one that affects the outcome of the case and requires a trial to resolve differing versions of the truth. *Admiralty Fund v. Hugh Johnson & Co.*, 677 F.2d 1301, 1305–06 (9th Cir.1982). In deciding the motion the court views the evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in that party's favor. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630–31 (9th Cir.1987). However, the non-moving party must respond to an adequately supported motion by showing that a genuine issue of material fact exists; if the response falls short of that, summary judgment should

be granted. Fed.R.Civ.P. 56(e); *T.W. Elec. Serv., Inc.,* 809 F.2d at 630–31.

Here, there is no genuine issue of material fact as to the federal claims.

 As confirmed by CGA at the June 20 hearing, there are only two federal claims. The first is that CGA was denied procedural due process as guaranteed by the Fourteenth Amendment. The District's actions challenged herein, however, were clearly legislative in nature. The moratoria and the definitions of "committed" and "uncommitted" were general enactments affecting a large number of current and potential water users; they were directed not at CGA nor any other individual, but to the over-all problem of a water shortage. Due process is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law. *Halverson v. Skagit County,* 42 F.3d 1257, 1260 (9th Cir.1994). That was done here, and the procedural due process claim must be dismissed.

CGA's second federal claim asserts denial of substantive due process. In that regard the due process clause guards against arbitrary and capricious government action having no substantial relation to the public health, safety, morals, or general welfare. *See Halverson* at 1261. The District's actions here were clearly lawful under that test, and summary judgment dismissing the substantive due process claim is granted.

No federal taking claim has been asserted. If one were asserted, it would have to be dismissed because CGA has not first sought compensation through available state procedures. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1402–04 (9th Cir.1989).

CGA's motion for partial summary judgment, insofar as it relates to the federal claims, is denied.

· CGA's remaining claims, asserted under state law, raise questions that should be decided in state court. Accordingly, all of the claims over which this court had original jurisdiction having been dismissed, the court declines pursuant to 28 U.S.C. § 1367(c)(3) to exercise supplemental jurisdiction over the state claims, and the case (now consisting of the state claims and defenses thereto) will be remanded to the Superior Court of the State of Washington for King County. The District will recover costs in this court. Judgment will be entered accordingly.

The clerk is directed to send copies of this order to all counsel of record.