125 P.3d 522

STATE of Idaho, Plaintiff–Respondent,

v.

Joshua W. BENNETT, Defendant–
Appellant.

State of Idaho, Plaintiff–Respondent,

v.

Clinton L. Marsters, Defendant–
Appellant.

State of Idaho, Plaintiff–Respondent,

v.

Jennifer L. Ouellette, Defendant–
Appellant.

Nos. 31117, 31118, 31119.

Supreme Court of Idaho,
Moscow, October 2005 Term.

Nov. 23, 2005.

Debrha Jo Carnahan Law Offices, Boise, for appellants.

Hon. Lawrence G. Wasden, Attorney General, Boise, for respondent. Rebekah A. Cude argued.

SCHROEDER, Chief Justice.

Joshua W. Bennett, Clinton L. Marsters, and Jennifer L. Ouellette (collectively, "appellants") were cited for violating I.C. § 23-604, which prohibits individuals under twenty-one years of age from purchasing, consuming, or possessing alcoholic beverages. They are all under twenty-one but eighteen years or older. The magistrate court denied their motion to dismiss the charges. The district court affirmed the magistrate court's decision in an interlocutory appeal. The appellants argue that: (1) a spoliation of evidence occurred when the State officers poured out the contents of, and then threw away, the can and bottles containing the alcoholic beverages allegedly in their possession; and (2) I.C. § 23-604 and § 18-1502 are unconstitutional as written and applied because there is no rational relationship between the state's interest in prohibiting alcohol use among minors (I.C. § 23-604) and the corresponding punishment suspending a minor's driver's license (I.C. § 18-1502).

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Sergeant Bruce Fager (Fager) and Officer Dustin Blaker (Blaker) were on alcohol emphasis control on August 22, 2003, in an area known by the officers for its noise complaints and parties. They encountered three college students carrying containers of what looked and smelled like alcoholic beverages. According to the record before this Court, Ouellette was carrying a white grocery sack and walking across a parking lot with a young man who was twenty-one years old. Ouellette told the officers she was nineteen, and that there was beer in the bag. There were two unopened bottles in the bag with the labels "Tequiza" printed on them. Officer Fager testified that when he opened the bottles and poured out the contents, the liquid inside was "like beer" in its smell, look, and amber color, and also in the way it foamed. After pouring out the contents, Fager threw the beer bottles into a nearby garbage can as a matter of practice, following the posting of a 1993 memo on Moscow Police Department letterhead from the Deputy Prosecutor. The memo stated:

YOU do not need to enter Empty Beer cans or Beer in General into Property if you cite someone for Possession of Beer by a Minor. Cite the suspect or suspects and dump the beer into the garbage dumpster later. YOU should be able to make your case on the fact that you know what beer smells like, and what you saw, etc.

While the officers were talking to Ouellette, Officer Blaker noticed Bennett coming from an apartment complex, walking in the direction of the officers, and carrying two blue bottles, one in each hand. As Blaker approached Bennett, Bennett stopped, looked at Blaker, and "just kind of lowered his hands down." At that point Blaker also saw Marsters moving toward the driver's side of a vehicle and holding a silver can. Blaker instructed Bennett to put the blue bottles down on the ground. While Blaker was doing this, Marsters disappeared behind a trailer that was parked next to the car, and returned without the silver can in his hand. After determining that both Bennett and Marsters were twenty years of age, Blaker walked around the trailer to where Marsters had disappeared earlier. Blaker discovered a half-empty twelve ounce can of Bud Light and an unopened bottle of Mike's Cranberry Hard Lemonade. He then examined the two blue bottles Bennett had been carrying. One bottle was opened and the other was not. The labels on each read "Labatt Blue." Blaker poured out the contents of the can and bottles possessed by Bennett and Marsters. He testified that the liquid contents smelled, looked, and behaved like alcoholic beverages. He threw away the Bud Light can and the bottles of Mike's Cranberry Hard Lemonade and Labatt Blue because that was what his superiors at the Moscow Police Department had taught him to do. The officers cited Ouellette, Marsters, and Bennett for possession of alcoholic beverages.

The appellants moved to dismiss the citations, claiming: (1) a spoliation of evidence occurred when the citing officers dumped out the contents of, and then threw away, the can and bottles containing the beverages; and (2) I.C. § 23-604 and § 18-1502 are unconstitu-

tional as written and applied because there is no rational relationship between the state's interest in prohibiting alcohol use among minors (I.C. § 23–604) and the corresponding punishment suspending a minor's driver's license (I.C. § 18–1502).

The magistrate court held an evidentiary hearing and denied the motion to dismiss, finding that there was no issue of spoliation of evidence, and that I.C. § 23–604 and § 18–1502 are constitutional. The magistrate court recommended acceptance of an interlocutory appeal. The district court accepted the appeal from the magistrate court and subsequently affirmed denial of the motion to dismiss. The appeal to this Court followed.

## II.

### STANDARD OF REVIEW

■■■ When reviewing the decision of a district court acting in its appellate capacity over the magistrate division, *this Court reviews the magistrate court's decision independently of, but with due regard for, the district court's intermediate appellate decision.* This Court will uphold the magistrate court's findings of fact if they are supported by substantial, competent evidence in the record. With respect to conclusions of law, this Court exercises free review.
*State v. Doe,* 140 Idaho 271, 273, 92 P.3d 521, 523 (2004) (emphasis added) (internal citations omitted). Substantial evidence is "such evidence as a reasonable mind might accept to support a conclusion; it is more than a scintilla, but less than a preponderance." *Clear Springs Foods, Inc. v. Clear Lakes Trout Co.,* 136 Idaho 761, 764, 40 P.3d 119, 122 (2002) (quoting *Evans v. Hara's, Inc.,* 123 Idaho 473, 478, 849 P.2d 934, 939 (1993)).

■■■ The constitutionality of a statute is a question of law, over which this Court exercises de novo review. *State v. Cobb,* 132 Idaho 195, 197, 969 P.2d 244, 246 (1998). The party challenging a statute on constitutional grounds bears the burden of establishing that the statute is unconstitutional and "must overcome a strong presumption of validity." *Olsen v. J.A. Freeman Co.,* 117 Idaho 706, 709, 791 P.2d 1285, 1288 (1990). An

appellate court is obligated to seek an interpretation of a statute that will uphold its constitutionality. *Cobb,* 132 Idaho at 197, 969 P.2d at 246. Additionally, "it is a general rule that 'a legislative act should be held to be constitutional until it is shown beyond a reasonable doubt that it is not so, and that a law should not be held to be void for repugnancy to the Constitution in a doubtful case.'" *Bradbury v. Idaho Judicial Council,* 136 Idaho 63, 68, 28 P.3d 1006, 1011 (2001) (quoting *Sanderson v. Salmon River Canal Co.,* 45 Idaho 244, 256, 263 P. 32, 35 (1927)).

■■■ The rational relationship test is applied under both the substantive due process clause and the equal protection clause in determining the constitutionality of a law that does not deal with a fundamental right. *Cecelia Packing Corp. v. U.S. Dept. of Agriculture/Agricultural Mktg. Serv.,* 10 F.3d 616 (9th Cir.1993). "Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a 'clear showing of arbitrariness and irrationality.'" *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1234 (9th Cir.1994). Moreover, "in a substantive due process challenge, we do not require that the [government's] legislative acts actually advance its stated purposes, but instead look to whether " 'the governmental body *could* have had no legitimate reason for its decision.'"" *Id.* Additionally, "[i]f it is 'at least fairly debatable' that the [government's] conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process." *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir.1994) (quoting *Kawaoka,* 17 F.3d at 1234).

## III.

### THE APPELLANTS' DUE PROCESS RIGHTS WERE NOT VIOLATED BY THE DESTRUCTION OF EVIDENCE

The appellants argue that a spoliation of evidence occurred when the citing officers dumped out the contents of, and then threw away, the can and bottles containing the

alcoholic beverages "allegedly" in the possession of the appellants. The appellants contend that the destruction of this "potentially exculpatory evidence" has unconstitutionally deprived them of their ability to mount a meaningful defense.

 The standard to be applied concerning the spoliation of evidence is found in *Garcia v. State Tax Comm'n of State of ID*, 136 Idaho 610, 615, 38 P.3d 1266, 1271 (2002):

> The destruction of evidence is not per se a violation of defendant's due process rights. Whether the destruction of evidence constitutes a due process violation depends upon the nature of the proceeding, the nature of the evidence, and the circumstances surrounding the destruction of the evidence. *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988) (holding "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law"); *Paradis v. State*, 110 Idaho 534, 539, 716 P.2d 1306, 1311 (1986). This Court has previously held that a specific showing of bad faith is required to constitute a due process violation. In the criminal context, this Court applies a balancing test, which examines "(1) whether the evidence was material to the question of guilt or the degree of punishment; (2) whether the defendant was prejudiced by the loss or destruction of the evidence; and (3) whether the government was acting in good faith when it destroyed or lost the evidence." *State v. Porter*, 130 Idaho 772, 781, 948 P.2d 127, 136 (1997); *State v. Fain*, 116 Idaho 82, 91, 774 P.2d 252, 261 (1989).

*1. Appellants Have Not Established that the Destroyed Evidence was of Exculpatory Value*

 For the destroyed containers and their contents to have been "material" and thus possess exculpatory value, this evidence "must possess an exculpatory value that was apparent before the evidence was destroyed, and also be of such a nature that that defendant would be unable to obtain comparable evidence by other reasonably available means." *Garcia*, 136 Idaho at 615, 38 P.3d at 1271 (internal citations omitted).

To be exculpatory in this case there must be some indication that either: (1) there was no container; (2) or the container was not an alcohol container; (3) or the contents of the containers were not "alcohol." There is nothing to suggest the appellants were not holding containers, or that the containers were anything other than alcohol containers, or that the liquid inside the containers was anything other than alcohol. Ouellette told the officer "there was beer in the bag." The appellants made no request for preservation of the cans and/or bottles found in their possession or to test their contents. The officers testified that the containers contained liquid that looked, smelled, and foamed in a manner consistent with an alcoholic beverage. There is no showing or evidence to support an inference that the destroyed evidence would have been exculpatory. The appellants may argue at trial that the prosecution has not met its burden or proof.

*2. Appellants Have Not Established that the Destruction of the Containers was Prejudicial*

The second element of the balancing test is whether the appellants were prejudiced by the loss of the evidence. The only way the appellants may be prejudiced is by not being able to test whether the actual liquid contained inside the can and bottles was alcohol. The state suffers the same disability which may weaken its case in the eyes of the fact finder.

*3. Appellants Have Not Shown that the Destruction of the Containers and Their Contents was Done in Bad Faith*

"The final element of the balancing test requires a specific showing that the evidence was destroyed in bad faith. A showing of bad faith is required regardless of whether the exculpatory nature of the evidence is known or not." *Garcia*, 136 Idaho at 616–17, 38 P.3d at 1272–73 (internal citations omitted).

There is no showing that the citing officers acted in bad faith. A review of the record shows that the citing officers did not act in a manner inconsistent with the "high hundreds or even ... thousands" of cases involving underage possession of alcohol citations when they disposed of the containers and contents. The containers and their contents were disposed of in the presence of the appellants. There is nothing in the record showing that any appellant said anything to the citing officers at that time about preserving the containers or their contents, or about the liquids not being alcoholic beverages. Officer Fager testified that he acted in accordance with a 1993 Memorandum on Moscow Police Department letterhead telling officers not to enter beer cans or beer in general into the evidence room in cases involving, specifically and only, citations for minor in possession of alcohol. Officer Blaker testified that he acted in accordance with what his training officer had told him to do. The Moscow Police Department (MPD) Property Manager testified that there were administrative and fiscal reasons for not keeping the evidence found in minor in possession of alcohol cases—she doesn't "have room." Even if the property manager were able to keep such evidence, the policy of the state testing lab is to not accept alcohol from a minor in possession case. There is no showing of bad faith in the destruction of the cans, bottles or their contents.

## IV.

### IDAHO CODE § 23–604 AND § 18–1502 DO NOT FAIL FUNDAMENTAL CONSTITUTIONAL REQUIREMENTS

The appellants argue that this Court must evaluate whether I.C. § 18–1502 shares "a real and substantial relationship to the object sought to be obtained." *Nebbia v. People of New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). They also contend that the suspension or revocation of a driver's license violates the fundamental right to interstate travel, because "in today's realities, the automobile is the primary means of transportation for the vast majority of those old enough to drive." They cite to *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), and *Saenz v. Roe,* 526 U.S. 489, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999), cases in which state laws that either denied or lowered welfare benefits to new residents were invalidated because they unconstitutionally burdened the right to travel.

The rational relationship test is applied under both the substantive due process clause and the equal protection clause in determining the constitutionality of a law that does not deal with a fundamental right. *Cecelia Packing Corp. v. U.S. Dept. of Agriculture/Agricultural Mktg. Serv.,* 10 F.3d 616 (9th Cir.1993). "Legislative acts that do not impinge on fundamental rights or employ suspect classifications are presumed valid, and this presumption is overcome only by a 'clear showing of arbitrariness and irrationality.'" *Kawaoka v. City of Arroyo Grande,* 17 F.3d 1227, 1234 (9th Cir.1994) (internal citations omitted). Moreover, "in a substantive due process challenge, we do not require that the [government's] legislative acts actually advance its stated purposes, but instead look to whether "'the governmental body *could* have had no legitimate reason for its decision.'"" *Id.* Additionally, "[i]f it is 'at least fairly debatable' that the [government's] conduct is rationally related to a legitimate governmental interest, there has been no violation of substantive due process." *Halverson v. Skagit County,* 42 F.3d 1257, 1262 (9th Cir.1994) (quoting *Kawaoka,* 17 F.3d at 1234).

■ It is clear that the State has a legitimate interest in the prevention of underage drinking. The test of a rational relationship is not whether the punishment reflects the crime. Typically punishments do not and commonly cannot bear similarity to the offense. Fines are a punishment, constitutionally accepted so long as they do not contravene cruel and unusual punishment standards. They commonly do not reflect the nature of the offense, but they are believed to have a deterrent effect. Consequently, they are rationally related to the legitimate State interest—deterrence. Similarly, suspension of a driver's license does not necessarily reflect the crime committed. Rather, it is a form of deterrence.

**172**

The legislature could elect this form of punishment in the belief that it would deter underage drinking and potentially act as a deterrent to unlawful drinking and driving.

Similar statutes in other states have been upheld to be constitutional. The reasoning is articulated in *State v. Day*, 84 Or.App. 291, 294, 733 P.2d 937, 938 (Or.App.1987):

> The legislative history reveals that the law was intended to meet two goals: deterrence of drug and alcohol possession and use among young people and promotion of highway safety. Both goals are legitimate. The legislature considered the sanction appropriate to meet these goals because of the lack of other meaningful penalties for the group and the recognition that driving is a privilege young people do not want to lose.

Also, in *Commonwealth v. Strunk*, 400 Pa.Super. 25, 32–33, 582 A.2d 1326, 1329 (Pa.Super.1990), a Pennsylvania court reviewing a similar statute stated:

> Indeed it is quite plausible and even probable that the legislature may have intended section 6310.4 to promote the goals of deterrence and punishment, i.e. to discourage the possession and consumption of alcohol by underage individuals. It is undisputed that underage drinking and driving results in a high number of fatalities in the United States each year. *See* Rosenthal, *The Minimum Drinking Age for Young People: An Observation*, 92 Dick.L.Rev. 649, 657 (1988). It follows, therefore, that if underage drinking could be eliminated, thousands of lives could be saved each year. With these premises in mind, we note that prior to section 6310.4's enactment, those under 21 years of age convicted of possession or consumption of alcoholic beverages were often subject only to a fine, in some cases as low as $25.00. The legislature may have believed that in many cases such fines were either paid by the violator's parents or were so minimal as to serve neither punitive nor deterrent functions. Thus, the legislature may have sought to impose a penalty which would deter and punish any offender, regardless of the financial penalty involved. Clearly, the penalty of a 90–day license suspension

advances both of these goals. We find, therefore, that both deterrence and punishment represent legitimate state interests, and indeed may have constituted the legislative goals underlying the challenged enactment.

Finally, in *People v. Valenzuela*, 3 Cal. App.4th Supp. 6, 10, 5 Cal.Rptr.2d 492, 494 (1991), the California Superior Court held that restrictions placed on a driver's license for underage possession of alcohol "reflect[s] the Legislature's intent to reduce the incidence of injuries and deaths occurring as a result of automobile accidents caused by minors under the influence of alcohol or illegal drugs. Suspension of a minor's driver's license upon conviction of use or possession of alcohol or illegal drugs is rationally related to this purpose."

The fact that the suspension is applicable to persons between eighteen and twenty-one, who are in most respects deemed adults, does not render it unconstitutional. They are still subject to restrictions on drinking and are subject to the same sanctions for punishment and deterrence.

### V.

### THE SUSPENSION OR REVOCATION OF DRIVING PRIVILEGES DOES NOT UNCONSTITUTIONALLY BURDEN THE RIGHT TO TRAVEL

The suspension or revocation of driving privileges does not limit the right to travel, merely the means. Typically punishments interfere with travel. Jail prevents it. Fines limit the opportunity in some instances. Suspension of driving privileges may make travel less convenient. There is no constitutional infringement, however.

### VI.

### CONCLUSION

The magistrate court's denial of appellants' motion to dismiss and the district court's affirmance of that decision are affirmed.

Justices TROUT, EISMANN and BURDICK concur.

JONES, J., concurring in part and dissenting in part.

I concur with the Court's analysis and conclusions, including that part of Section IV upholding the penalty provisions of Idaho Code § 18–1502(d) on substantive due process grounds. However, I disagree with regard to that part of Section IV upholding those provisions against appellants' equal protection challenge. My view is that the State's confusing behavior on the issue of suspending driving privileges of only one class of adults—those in the 18–20 age group—results in a failure to pass the rational relationship test under an equal protection analysis.

The appellants argue that the penalty provisions are unconstitutional on due process and equal protection grounds because there is no rational relationship between the crime of underage possession of alcoholic beverage and the punishment of driver's license suspension, particularly for those who are adults. In support of their position, they cite a 1984 opinion of the Idaho Attorney General, which so concluded.[1] Idaho Op. Atty. Gen. No. 84–5. The 1984 Opinion dealt with a predecessor statute that required the Idaho Department of Transportation to suspend the driving privileges of persons under the age of 19 who were convicted of alcohol offenses not related to the operation of a motor vehicle. The Opinion concluded that the suspension provision "is unconstitutional on equal protection grounds—and probably on substantive due process grounds—because the suspension of driver's licenses of minors following convictions for offenses having no rational relationship to the operation of a motor vehicle does not substantially further a legitimate, articulated state purpose." *Id.* at 1. The Opinion applied the rational relationship test to the substantive due process and equal protection analyses. The Opinion further concluded that the statute failed to provide procedural due process in the suspension proceedings provided for therein.

In their argument before the district court, the appellants noted that a legal guideline issued by a deputy attorney general on October 16, 1991, concluded the procedural due process defect had been cured by subsequent amendments to the code section in question but that the substantive due process and equal protection problems had not been addressed by subsequent legislation. The guideline indicated, however, that two court cases from other jurisdictions—*State v. Day*, 84 Or.App. 291, 733 P.2d 937 (Or.App.1987) and *Commonwealth v. Strunk*, 400 Pa.Super. 25, 582 A.2d 1326 (Pa.Super.1990)—had upheld similar statutes against constitutional attack, although "neither court has persuasively articulated a rational relationship between the state's valid goal of enforcing statutes dealing with underage drinking and the chosen penalty of suspending driving privileges."

The tentative conclusion in the 1984 Opinion that the suspension provision relating to those under age 19 is "probably" unconstitutional on substantive due process grounds is unsupported under this Court's holdings regarding the rational relationship test. *Coghlan v. Beta Theta Pi Fraternity*, 133 Idaho 388, 396, 987 P.2d 300, 308 (1999); *Sanchez v. City of Caldwell*, 135 Idaho 465, 467, 20 P.3d 1, 3 (2001).

The same rational relationship test applies in an equal protection analysis. On this ground, it is my conclusion that the penalty provisions in question fail the test. The reason is that the State has acted erratically and in a somewhat contradictory manner since at least 1983 in establishing policy with regard to the suspension of driving privileges of young citizens for their violation of statutes pertaining to alcohol possession and use. The State's own actions cast doubt on the rationality of the relationship between the crime and the punishment.

We start with the 1983 statute providing for the suspension of driving privileges for those under 19 who violate the specified alcohol statutes. 1983 Statutes, ch. 266, § 1. The 1984 Opinion stated there was no rational relationship between the punishment and the crime. Aside from the question of how

---

1. It should be noted that an official opinion of the Attorney General is not binding on this Court. "While not binding on this Court, those opinions are entitled to consideration." *Ehco Ranch, Inc. v. State ex rel. Evans*, 107 Idaho 808, 811, 693 P.2d 454, 457 (1984).

much, if any, weight this provides from a legal standpoint, the conclusion of the Legislature's official counsel points to the lack of a legislatively established nexus between the underage alcohol offense and the license suspension punishment. In 1987 the Legislature increased the age for imposition of the penalty to persons under 21. 1987 Statutes, ch. 212, § 1. However, in 1989, the Legislature lowered the age for license suspension to 17 or under. 1989 Statutes, ch. 155, § 10. In 1990, the Legislature stated the suspension age was to apply to those under 18. 1990 Statutes, ch. 280, § 1. Then came the legal guideline indicating that previous legislation had not addressed the substantive due process and equal protection problems identified in the 1984 Opinion. The *State v. Day* and *Commonwealth v. Strunk* opinions cited in the guideline offer no help with regard to the equal protection issue, because neither case dealt with that issue. Both were concerned with substantive due process. In 1994, the Legislature enacted the current statutory scheme, raising the suspension age by three years, so as to apply to offenders under 21. 1994 Statutes, ch. 133, § 1.

Further confusion results from other provisions of the Idaho Liquor Act, which is compiled as §§ 23–101 through 23–807. I.C. § 23–101. This includes I.C. § 23–604, which subjects persons under 21 who consume or possess alcoholic beverages to the punishment set out in I.C. § 18–1502. The heading of that section reads, "Minors—Purchase, consumption or possession prohibited." This statute obviously applies to persons who are not minors because, as defined in I.C. § 32–101, males and females "under eighteen (18) years of age" are minors, while those 18 and older are adults. However, I.C. § 23–101, which sets out the purpose of the Idaho Liquor Act, states that the Act "is not designed to abridge the personal privilege of a responsible adult to consume alcoholic liquor as a beverage, except in cases of the abuse of that privilege to the detriment of others." There appears to be some tension between I.C. § 23–101 and I.C. § 23–604 insofar as they use the terms "minor" and "adult". Combined with the assertions in the 1984 Opinion and 1991 guideline that a legislative nexus has not been established between statutes dealing with underage drink-

ing and the license suspension penalty, one can conclude that a rational relationship does not exist for treating one category of adults—those who are 18, 19 and 20—differently than all other adults. An interesting side note is provided in I.C. § 18–1502C. That statute provides that persons under the age of 18 who are found to be in possession of marijuana are to have their driving privileges suspended. There is no indication of what the policy reason is for this differential between the license suspension ages for alcohol violators as opposed to marijuana violators. Those 17 and under who violate the marijuana laws are subject to license suspension while those 20 and under who violate underage drinking laws are subject to the same type of suspension.

The Court has cited a case, *People v. Valenzuela,* 3 Cal.App. 4th Supp. 6, 5 Cal. Rptr.2d 492 (1991), wherein the court upheld restrictions on driving privileges for underage possession of alcohol. However, the nexus between the crime and the punishment was supported by detailed legislative findings in the California vehicle code. 5 Cal.Rptr.2d at 493. Here, the State's legal counsel twice indicated the lack of such a nexus and the suspension age has bounced between 17 and 20 with no apparent explanation. As a result of this confusion, I would hold the penalty provisions violative of equal protection with regard to the category of adults aged 18–20.