552 P.2d 482

Gladys HATLEY, Claimant-Respondent,

v.

LEWISTON GRAIN GROWERS, INC., Employer, and Industrial Indemnity Company, Surety, Defendants-Appellants.

No. 11924.

Supreme Court of Idaho.

July 22, 1976.

John W. Barrett of Moffatt, Thomas, Barrett & Blanton, Boise, for defendants-appellants.

Paul C. Keeton, Darrel W. Aherin, Lewiston, for claimant-respondent.

BAKES, Justice.

This appeal is brought by the employer, Lewiston Grain Growers, Inc., and its surety, Industrial Indemnity Company, from an Industrial Commission determination that the claimant, Gladys Hatley, is entitled to full income benefits as the surviving widow of Jesse Hatley who was killed in the course of his employment when his semi-truck overturned. The employer argues that the Industrial Commission erred in failing to find that the accident which caused Jesse Hatley's death was a result of his intoxication.

On October 16, 1973, Hatley, a long haul truck driver for Lewiston Grain Growers, Inc., was returning to Lewiston from Great Falls, Montana, on U.S. Highway 12 with a load of 100-pound sacks of linseed meal. He stopped outside of Missoula at a truck stop in Lolo, Montana, at approximately 2:30 p. m. He had become acquainted with the proprietors of the truck stop several months before, and frequently stopped there when making a Lewiston-to-Great Falls run. On this occasion, he remained for approximately one hour during which time he ate a steak dinner and visited with the proprietress, and his truck was fueled. He left the truck stop between 3:30 and 4:00 p. m. Approximately one half hour later, at 4:15 p. m., his truck overturned outside of Lolo Hot Springs, Montana, which is about twenty miles west of the truck stop. There were no witnesses to the accident. Hatley was dead when the Montana Highway Patrol arrived at 5:40 p. m. A fifth of whiskey which was two-thirds full was found in the cab and a subsequent test revealed that Hatley had a blood alcohol level of .117 percent.

Hatley's truck was a 1973 model with approximately 22,000 miles on it. It was regularly serviced and had no known defects. The loaded truck was approximately 74,000 pounds, which was within the legal weight limit. The sacks of linseed meal were stacked crosswise in such a manner as to lock the load and prevent shifting.

The stretch of U.S. Highway 12 immediately preceding the scene of the accident consisted of a series of turns on a gradual incline. The highway entered an "S" curve after going over a narrow bridge, the first curve being a gradual turn to the right and the second curve being a sharp turn to the left. The road was paved and dry, the weather was clear, and it was daylight. The tire marks of Hatley's truck indicated that in coming out of the first right hand curve the truck was in the center of the highway, and in negotiating the sharper left hand curve the truck went over to the right hand side of the highway where the rear wheels of the trailer went off the pavement. The trailer overturned first, pulling the cab over with it, in the middle of the curve. There was no evidence that the brakes had been applied.

In their answer to the claimant Gladys Hatley's application for a hearing, the employer and surety indicated that they would rely on the defense contained in I.C. § 72–208(2), asserting that Hatley's death was the proximate result of his intoxication and therefore under the statute income benefits

should be reduced by 50%.[1] At hearings before the Industrial Commission, the employer and surety introduced testimony of an officer of the Montana Highway Patrol who had investigated the accident. He testified that in his opinion Hatley took the curve too fast and that his ability to operate the vehicle was impaired by his consumption of alcohol. The officer also admitted that this curve had caused previous accidents, and a semi-truck had gone over at that point a year before.

A clinical chemist and toxicologist also testified and gave his opinion that an individual's reflexes, depth perception and overall ability to operate a vehicle would be impaired with a .117 percent blood alcohol level. On cross examination he stated that individual reactions to alcohol will vary depending upon many factors, and that the consumption of food will slow the absorption of alcohol.

Depositions of the proprietors of the truck stop were introduced into evidence by the claimant. One of them, Roberta Dale Hicks, testified that she had served Hatley a steak dinner in the afternoon of October 16, 1973, and had visited with him most of the time he was there. Her opinion was that Hatley was not drunk, that she could not smell alcohol on him, that his physical movements were normal and that his attitude was happy: ". . . He was like he always was, a real nice pleasant quiet man." Robert Hicks testified that he talked to Hatley while he fueled Hatley's truck. He also stated that Hatley's behavior was normal, that he did not appear to be intoxicated, and that he could not smell alcohol on Hatley's person. Hicks admitted that Hatley had jokingly stated that he had a bottle of whiskey in his truck, although he never took it out and Hicks never saw Hatley drink from it.

In its findings of fact and conclusions of law the Industrial Commission made the following finding:

"A chemical test of deceased's blood showed a blood alcohol level of .117 grams per cent alcohol, sufficient to impair his ability to operate a motor vehicle. Claimant was intoxicated to an unknown degree." Clk.Tr., p. 28.

The Commission also found that Hatley did not appear to be intoxicated while at the truck stop and consumed no alcoholic beverages while there, but ate a steak dinner. In its conclusions of law, the Commission noted that under I.C. § 72–228 there is a rebuttable presumption that the employee's death was not occasioned by his intoxication. The Commission concluded that "there is an absence of substantial evidence that the claimant's death was occasioned by his intoxication."

The sole issue to be decided in this appeal is whether the record supports the Commission's findings and conclusions that there was a lack of substantial evidence that Hatley's death was the proximate result of his intoxication. The Industrial Commission did not resolve the apparent conflict between the fact that the decedent had .117 percent blood alcohol level and the testimony of the Hickses that Hatley was not intoxicated shortly before the accident, but rested its decision on a determination that the employer had not presented substantial evidence that the death was caused by intoxication. Our review is confined to the correctness of that determination, which is a question of law. Idaho Const. Art. 5, § 9; I.C. §§ 72–724 and 72–732.

Relevant to our inquiry in this case is the statutory language of I.C. § 72–208 that, "If an injury is the proximate re-

[1] "72–208. Injuries not covered—Wilful intention—Intoxication.—

.    .    .    .    .

"(2) If an injury is the proximate result of an employee's intoxication, all income benefits shall be reduced by fifty per cent (50%), provided that such reduction shall not apply where the intoxicants causing the employee's intoxication were furnished by the employer or where the employer permits the employee to remain at work with knowledge by the employer or his supervising agent that the employee is intoxicated."

**722**

sult of an employee's intoxication, all income benefits shall be reduced by fifty per cent (50%) . . . ."[2] We must also consider the provisions of I.C. § 72–228 that, "In any claim for compensation, where the employee has been killed, . . . it shall be presumed, in the absence of substantial evidence to the contrary, . . . that the injury or death was not occasioned by the employee's intoxication . . . ."

■ In light of the presumption imposed by I.C. § 72–228, it is incumbent upon an employer relying on the intoxication defense to come forth with substantial affirmative evidence showing that the employee was intoxicated at the time of death and also that the intoxication proximately resulted in the injury. *Potter v. Realty Trust Co.*, 60 Idaho 281, 90 P.2d 699 (1939). It is not sufficient that the defendant present negative evidence, e. g., tending to rule out other possible causes of the injury such as mechanical difficulties, bad weather or another vehicle on the road. *Haller Beverage Corp. v. Dept. of Industry, Labor and Human Relations*, 49 Wis.2d 233, 181 N.W.2d 418 (1970). Evidence that the employee may have been drinking at the time of the accident does not necessarily establish that he was intoxicated at that time, nor does a finding that he was intoxicated lead to an inevitable conclusion that the intoxication caused the accident. *Douglas Aircraft Co. v. Industrial Accident Commission*, 47 Cal.2d 903, 306 P.2d 425 (1957).

■ The employer and surety have placed great emphasis on the blood alcohol level test results which were .117 per cent, and the testimony of the toxicologist re-

garding the effect of a .117 blood alcohol level on an individual. The failure of the Industrial Commission to resolve the factual question presented by this case in the employer and surety's favor does not mean that it ignored or did not consider this evidence, *Madron v. Green Giant Co.*, 94 Idaho 747, 497 P.2d 1048 (1972), and it is clear that the Commission did utilize this evidence in arriving at its finding that Hatley was intoxicated to an unknown degree at the time of the accident. However, the finding of intoxication does not necessitate a finding that the intoxication caused the accident, particularly in view of the presumption contained in the statute that the death was not occasioned by the employee's intoxication. I.C. § 72–228. The cases from other jurisdictions cited by appellants which have regarded blood alcohol level as persuasive evidence that intoxication caused the employee's injury had involved considerably higher blood alcohol level readings, e. g., .27, .29, .351 and .387 percent. We do not need to decide in this case how high a blood alcohol reading would be necessary in order for it to constitute sufficient evidence of causation to overcome the statutory presumption that the intoxication did not cause the accident. We only hold that the blood alcohol level of .117 percent in this case is not sufficiently high to overcome the statutory presumption against causation.

■ The only other testimony regarding causation was the expert testimony of the toxicologist regarding the effect of a .117 blood alcohol level on a person's ability to operate a motor vehicle, and the opinion of the investigating officer. Since

2. Prior to the revision of the Workmen's Compensation Code, effective January, 1972, the employee intoxication defense was set forth in I.C. § 72–202, which provided:
   "72–202. *Injuries not covered.*—No compensation shall be allowed for an injury caused:
   .　　.　　.　　.　　.
   "(2) by [the employee's] intoxication."
   The employer and surety contend that the present statute which has rephrased the

causative language and provides for a 50% reduction rather than a complete denial of benefits has liberalized the defense of employee intoxication. However, we do not perceive any substantive difference between the phrasing, "If an injury is the proximate result of an employee's intoxication" (the present statute) and "an injury caused . . . by his intoxication" (the former statute).

neither had witnessed the accident, both opinions were of necessity couched in generalities, and the opinion of the officer, from his view of the scene, suggested that both speed and intoxication caused the accident. The opinion of expert witnesses was not necessarily binding on the trier of fact, *State v. Myers,* 94 Idaho 570, 494 P.2d 574 (1972), and the Industrial Commission could have concluded that all of the evidence of intoxication, taken together, did not overcome the statutory pre-

sumption against causation.[3] Consequently, we conclude that the Industrial Commission did not err in its conclusion that there was a lack of substantial evidence in the record that Hatley's death was caused by intoxication.

Costs to respondent. No attorney fees allowed.

McFADDEN, C. J., DONALDSON and SHEPARD, JJ., and SCOGGIN, District Judge (Retired), concur.

3. The existence of the statutory presumption that, in the absence of substantial evidence to the contrary, the death was not caused by the employee's intoxication distinguishes this case from our rulings in *Ellison v. Bunker Hill Co.,* 96 Idaho 317, 528 P.2d 199 (1974), and *Nenoff v. Culligan Soft Water,* 95 Idaho 834, 521 P.2d 658 (1974). We remanded both of those cases to the Industrial Commission because it had failed to resolve factual conflicts, making its findings and conclusions deficient, and this Court was unable to review the factual basis for the Commission's conclusions. The findings and conclusions of the Industrial Commission in this case come dangerously close to that same deficiency. However, because we conclude that the employer did not present substantial evidence that Hatley's death was caused by his intoxication, and therefore the statutory presumption was not rebutted in this case, it is not necessary for us to remand this case to the Industrial Commission to enter new findings of fact and conclusions of law.