849 P.2d 934

**Gene Kent EVANS, Claimant–Appellant,**

v.

**HARA'S, INC., Employer, and Lumberman's Underwriting Alliance, Surety, and State of Idaho Industrial Special Indemnity Fund, Defendants–Respondents.**

No. 19269.

Supreme Court of Idaho,
Lewiston, October 1992 Term.

March 22, 1993.

Goicoechea Law Offices, Nampa, for claimant-appellant. Richard S. Owen argued.

Hawley, Troxell, Ennis & Hawley, Boise, for defendants-respondents Hara's Inc. and Lumberman's Underwriting Alliance. Karen L. Lansing argued.

Mallea & Scrivner, Boise, for defendant-respondent State of Idaho, Industrial Sp. Indem. Fund. Kenneth L. Mallea argued.

TROUT, Justice.

This is a worker's compensation case. The issues on appeal are whether the Industrial Commission (Commission) correctly applied the presumption contained in I.C. § 72–228 and whether substantial and competent evidence supports the Commission's

finding that the workplace did not contribute to claimant-appellant Gene K. Evans' (Evans) injury. We find the Commission correctly applied I.C. § 72–228 and there is substantial, competent evidence to support the Commission's finding that Evans was injured as a result of an alcohol withdrawal seizure and the workplace did not contribute to his injury. Accordingly, we affirm the decision of the Commission.

## I.

### SCOPE OF REVIEW

The Court's review of decisions of the Industrial Commission is limited by the Idaho Constitution and prior case law to a review of only questions of law. Idaho Constitution, art. 5, § 9; *Vendx Marketing Co., Inc. v. Dept. of Employment*, 122 Idaho 890, 841 P.2d 420 (1992). Our review of the correctness of the Commission's application of I.C. § 72–228 is a question of law. *Hatley v. Lewiston Grain Growers, Inc.*, 97 Idaho 719, 721, 552 P.2d 482, 484 (1976).

## II.

### BACKGROUND AND PRIOR PROCEEDINGS

On November 30, 1988, Evans sustained a serious head injury while working in the shipping department of Hara's, Inc. (Hara's). A referee appointed by the Commission made findings of fact which the Commission adopted after a de novo review of the record [1]. On appeal Evans concedes there is substantial and competent evidence to support the referee's findings of fact as well as the Commission's ultimate finding that his fall was occasioned by an alcohol withdrawal seizure. Evans contends, however, that the Commission improperly placed the burdens of production and persuasion, contrary to the provisions of I.C. § 72–228, and that there was not substantial affirmative evidence presented proving

the workplace in no way contributed to Evans' injury.

Because the findings are not in dispute, we will paraphrase them in pertinent part:

1. Evans was employed by Hara's, a manufacturer of mobile home windows, in their shipping department. His job responsibilities included banding groups of windows together for shipping and loading trucks.

2. On the afternoon of November 30, 1988, Evans sustained a serious head injury while working at Hara's. Evans was found on his knees in an aisleway several feet from his workstation and appeared somewhat dazed or incoherent. A bruise or abrasion approximately one inch wide and three to four inches long was observed on Evans' forehead. Evans was assisted to his feet and helped to an office. He was able to give his name and address but was unable to relate what happened to him.

3. Evans was taken to a medical clinic and examined by a physician. Paramedics thereafter transported him to Mercy Medical Center in Nampa. A bruise or swelling was discovered on the back of Evans' head. He became comatose and was transported to St. Alphonsus Hospital in Boise where he came under the care of Dr. Patrick Cindrich, a neurosurgeon.

4. The rear of Evans' skull was fractured. Although there was a large bruise at the rear of his head, there was no laceration thus indicating the injury was caused by blunt trauma. The blow to the back of the head was sufficient to rupture blood vessels in the brain and cause hemorrhaging in various areas including the front of the brain. Evans underwent surgery to relieve pressure on the brain and after an extended convalescence in St. Alphonsus Hospital, was transferred to a rehabilitation hospital and

1. *See* I.C. § 72–506(2) ("Every finding, order, decision or award made by any member, hearing officer, referee, or examiner pursuant to such investigation, inquiry or hearing, when approved and confirmed by the commission, and ordered filed in its office, shall be deemed to be the finding, order, decision or award of the commission.")

then to a care facility. Evans has residual brain damage and is totally disabled. He is unable to speak and often appears not to understand what is going on around him.

5. Evans is unable to relate what occurred. He worked in a level area with a concrete floor. He was not working at any height and there was no overhead machinery nor any object which could drop on him. There was no dangerous machinery or dangerous activity in the area. Evans was found on the concrete floor ten to twelve feet from any object. Following the accident, nothing unusual was noted about the work area and there was no indication as to what caused the injury. There were no apparent witnesses to the accident and an investigation by the Nampa Police Department revealed no evidence of criminal misconduct.

6. Evans is an alcoholic. He consumed up to twelve beers on days that he worked and on weekends, his consumption would increase to almost 24 beers a day. Evans attempted to stop drinking before his injury but was unsuccessful. He has a history of alcohol withdrawal seizures when he stops drinking. His medical records indicate he may have had as many as ten seizures prior to this injury. Evans' sister was present during three of these seizures. One occurred while Evans was standing or walking in a house. Although Evans' sister did not see him fall, he apparently fell, striking his head on a coffee table and landing on his back. On another occasion, Evans' sister heard a noise in the kitchen and entered whereupon she found Evans on his back experiencing a seizure.

7. Medical evidence indicates that some individuals suffer from alcohol withdrawal seizures when heavy alcohol consumption is stopped or greatly reduced. The period of greatest risk is from one to three days following the consumption of alcohol. While the form of seizure varies among individuals, they are typically the grand mal type which are generally convulsive. They begin with a rapid loss of consciousness and are generally followed immediately by a stiffening of the muscles in the body which may be extremely forceful. This phase is followed by uncontrolled jerking movements of the extremities and when the individual regains consciousness, there is a period of confusion and unsteadiness without any memory of the seizure.

8. On the evening of Saturday, November 26, 1988, four days prior to his injury, Evans attended a party where he consumed more than his usual quota of alcohol and became uncharacteristically unruly. He did not feel well the next day but still consumed a small amount of beer. On Monday, November 28, Evans did not go to work because of flu-like symptoms and an upset stomach. On Tuesday, Evans reported to work in the morning but left after the mid-morning break because he did not feel well. He consumed a small quantity of beer that day. The following day, the day of the accident, Evans reported for work in the morning. He mentioned to his supervisor that he did not feel well and consumed Mylanta that morning. He engaged in his regular work at his usual pace until he was discovered on his knees in the aisleway that afternoon.

9. Four physicians testified at the hearing on the issue of the likelihood that Evans sustained his head injury during an alcohol withdrawal seizure: (1) Dr. Richard Gerber, medical director at the Care Unit in Nampa who treats patients with alcohol addiction, testified that individuals who suffer alcohol withdrawal seizures generally slump to the floor if they are in a standing position when the seizure occurs. Gerber testified there is a low probability Evans was injured in connection with a fall during a seizure and believes seizures

are more likely to occur from one to three days after drinking has stopped. Gerber admitted there is considerable variation in this time frame and it is affected if alcohol consumption is reduced and not eliminated. He testified that Evans could have suffered an alcohol withdrawal seizure on November 30 but it was equally probable he did not; (2) Dr. Roy Clark, a psychiatrist from Seattle with an emphasis in treating chemical dependency, testified that Evans injury was beyond the time when most alcohol withdrawal seizures occur. He testified that most seizures occur within 48 hours of the last consumption of alcohol. He conceded that the time in which Evans could have had a seizure could have been extended if Evans consumed small quantities of alcohol from Sunday through Tuesday; (3) Dr. Richard Wilson, a Boise neurologist who treats seizure disorder, testified that such seizures generally occur within 7 to 48 hours following the complete cessation of drinking, or the beginning of a period of substantial reduction of alcohol intake. Evans' period of risk could have been extended by individual factors or patterns and Evans previously suffered a seizure three days after a substantial reduction in alcohol consumption. Wilson testified that, in his opinion, Evans suffered a convulsive alcohol withdrawal seizure and fell, striking the back of his head. He believes that any form of seizure, whether Evans became limp or rigid, placed him at a high risk for head injury; (4) Dr. Cindrich, the neurosurgeon who initially treated Evans, testified that based upon Evans' history of alcohol consumption, he likely was injured during an alcohol withdrawal seizure.

Cindrich testified that Evans may have initially fallen forward, striking his forehead against an object, and then rotated backward striking the back of his head on the concrete floor. Cindrich further testified that it was equally probable that Evans fell backward first striking the back of his head and then arose staggering forward before falling and striking his forehead. Cindrich's testimony emphasized that it was the blow to the back of Evans' head which caused Evans' disability.

Based on the foregoing, the Commission determined that Evans' injury occurred during the course of his employment but substantial evidence had been presented which rebutted the I.C. § 72–228 presumption in favor of Evans.[2] The Commission ruled that substantial evidence had been introduced such that a "reasonable mind could well conclude" that Evans' injury was caused by circumstances personal to him: an alcohol withdrawal seizure during which he fell from a level surface and was injured when the back of his head struck the cement floor. The Commission held that substantial evidence indicated Evans' injury did not result from any risk occasioned by the circumstances or instrumentalities of Evans' employment.

Finding the I.C. § 72–228 presumption rebutted, the Commission ruled that Evans had failed to sustain his burden of proving that his injury was causally related or arose out of his employment.

## III.

### THE COMMISSION CORRECTLY APPLIED I.C. § 72–228

Evans argues that the Commission incorrectly applied I.C. § 72–228 by not vesting in the employer both the burden of produc-

---

**2.** I.C. § 72–228 provides:

*Presumptions Favoring Certain Claimants.*—In any claim for compensation, where the employee … is physically or mentally unable to testify and where there is unrebutted prima facie evidence that indicates that the injury arose in the course of employment, it shall be presumed, in the absence of substantial evidence to the contrary, that the injury arose out of the employment, that sufficient notice of the accident causing injury has been given, and that the injury or death was not occasioned by the employee's intoxication or by his wilful intention to injure himself or to injure another.

478

tion and persuasion. We disagree and find the Commission correctly applied I.C. § 72–228.

■ Section 72–228 provides that in any worker's compensation claim where the employee "is physically or mentally unable to testify, and where there is unrebutted prima facie evidence that indicates that the injury arose in the course of employment, it shall be presumed, in the absence of substantial evidence to the contrary, that the injury arose out of the employment...."

It is clear from the record and all parties agree that Evans' injury arose in the course of his employment and Evans was unable to testify. Thus, according to I.C. § 72–228, the Commission was required to presume that Evans' injury arose out of his employment unless substantial evidence to the contrary was presented.

■ Evans argues that I.R.E. 301 and the discussion of presumptions set forth in *Bongiovi v. Jamison,* 110 Idaho 734, 718 P.2d 1172 (1986), should not apply in worker's compensation cases. We agree and have previously stated that "the Industrial Commission should not be, nor is it, governed by the same rules of evidence as courts of law." *Kinney v. Tupperware Co.,* 117 Idaho 765, 770, 792 P.2d 330, 335 (1990). We are thus left to determine what the legislature intended by the provision "it shall be presumed, in the absence of substantial evidence to the contrary," utilized in I.C. 72–228.

■ We have defined substantial evidence as such relevant evidence as a reasonable mind might accept to support a conclusion; it is more than a scintilla, but less than a preponderance. *Kinney,* 117 Idaho at 769, 792 P.2d at 334. In *Hatley,* 97 Idaho at 722, 552 P.2d at 485, we held that in order for an employer, relying on the defense that an employee was wilfully intoxicated, to overcome the presumption imposed by I.C. § 72–228, the employer must present substantial affirmative evidence that the injury arose out of circumstances not related to the employment, the employee's intoxication, and those circumstances proximately resulted in the injury.

It was not sufficient that the employer merely presented negative evidence tending to rule out other causes of the accident. *Id.*

Had the legislature intended what Evans suggests, it would have been a simple matter to provide in the statute that in those cases where the employee is physically or mentally unable to testify, the burden of proof will shift to the employer. Instead the legislature chose the "substantial evidence to the contrary" language suggesting that a portion of the burden would shift, but not the entire burden of both production and persuasion. Thus we conclude that once the employer has come forward with substantial affirmative evidence to indicate that the accident did not arise out of the employment, the burden shifts back to the employee to persuade the Commission that it did indeed arise out of the employment.

■ In the present case, the Commission's findings of fact, which Evans does not dispute, are replete with substantial affirmative evidence supporting the finding that Evans' injury was caused by a fall induced by an alcohol withdrawal seizure. Evans was an alcoholic with a history of alcohol withdrawal seizures which occurred when he stopped or substantially reduced his drinking. During previous seizures, Evans would fall from an upright position onto the floor. On the Saturday preceding Evans injury, he consumed more than his customary quota of alcohol and for the next three days, he substantially reduced his alcohol intake. On the fourth day, he was discovered on the floor several feet from his workstation and any object. The bruise at the rear of Evans' head indicated the injury was caused by a blunt trauma. Drs. Wilson and Cindrich opined that Evans' injury was caused by a fall onto the cement floor, induced by an alcohol withdrawal seizure.

The Commission's findings of fact also contain negative evidence which rule out other possible causes of Evans' injury. Evans worked in a level area and was not working at any height. No overhead machinery nor any object could have dropped

on him. There was no dangerous machinery or activity in the area and Evans was found several feet from any object. A post-accident investigation did not reveal anything unusual about the work area and a police investigation revealed no sign of foul play.

■ While negative evidence alone will not defeat the statutory presumption contained in I.C. § 72–228, this evidence may still be considered along with substantial affirmative evidence in evaluating whether substantial evidence has been presented to rebut the statutory presumption. Based on the totality of the foregoing evidence, we find the Commission correctly concluded that substantial evidence was introduced which a reasonable mind might accept to support a conclusion that Evans' injury was caused by a fall precipitated by an alcohol withdrawal seizure without any risk occasioned by the circumstances or instrumentalities of Evans' employment. This is sufficient to rebut the statutory presumption.

The Commission thereafter correctly concluded that without the benefit of the statutory presumption, Evans had the burden of persuasion in proving his accident arose out of his employment. A worker's compensation claimant has the burden of proving, by a preponderance of the evidence, all the facts essential to recovery. *Madron v. Green Giant Co.*, 94 Idaho 747, 749, 497 P.2d 1048, 1050 (1972). Evans' proof must establish a probable, not merely a possible, connection between cause and effect to support his contention that he suffered a compensable accident. *Callantine v. Blue Ribbon Linen Supply*, 103 Idaho 734, 735, 653 P.2d 455, 456 (1982).

### IV.

### SUBSTANTIAL AND COMPETENT EVIDENCE SUPPORTS THE COMMISSION'S FINDINGS THAT THE WORKPLACE DID NOT CONTRIBUTE TO EVANS' INJURY

■ We first examine whether an idiopathic fall onto a level surface which is precipitated by an alcohol withdrawal sei-

zure is compensable under our worker's compensation laws. The fact that Evans sustained his injury during the course of his employment is of little significance to our inquiry. We have previously ruled that injuries which occur at the workplace which are solely attributable to personal circumstances of the claimant are not compensable. *See, e.g., In re Sutton*, 83 Idaho 265, 361 P.2d 793 (1961) (claimant's sudden collapse and death at work was attributable to a heart attack and is not compensable as an industrial injury since no causal relationship existed between claimant's work and his death); *Duerock v. Acarregui*, 87 Idaho 24, 390 P.2d 55 (1964) (claimant who was shot by spouse during the course of employment was not entitled to worker's compensation benefits since injury did not arise out of employment but arose out of "marital infelicity").

The issue is whether a fall onto a level surface which is precipitated by a seizure is deemed an accident arising out of one's employment. "Accident" is defined in I.C. § 72–102(15)(b) as "an unexpected, undesigned, and unlooked for mishap, or untoward event, *connected with the industry in which it occurs*," while "injury" is defined in I.C. § 72–102(15)(a) as a "personal injury caused by an accident *arising out of and in the course of employment....*" (Emphasis added). This Court has previously interpreted these terms:

[A]n injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be

traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment.

*O'Loughlin v. Circle A Const.*, 112 Idaho 1048, 1051, 739 P.2d 347, 350 (1987), *quoting Kiger v. Idaho Corp.*, 85 Idaho 424, 430, 380 P.2d 208, 210–11 (1963).

Thus, an injury which cannot be traced to the worker's employment as a contributing proximate cause and which comes from a hazard to which a worker would have been equally exposed outside of the workplace is not compensable under our worker's compensation system. A fall onto a level surface precipitated by an alcohol withdrawal seizure is just as likely to happen at home, on the sidewalk, or in any other situs which a worker may frequent outside of the workplace. We therefore hold that an injury resulting from an idiopathic fall at the workplace does not arise out of employment and is not compensable under our worker's compensation system without evidence of some contribution from the workplace. In so holding, we are consistent with the majority of jurisdictions which have considered this question. *See* Larson, *The Law of Workmen's Compensation*, § 12.149(a) (1992); *cf. Smith v. Container Gen. Corp.*, 559 So.2d 1019 (Miss.1990).

▇ Given our holding that an idiopathic fall, in and of itself, is not compensable, we must next determine whether there is substantial and competent evidence to support the Commission's finding that there was no contribution from the workplace. Evans places great significance upon the presence of a mark observed on his forehead immediately after the accident. Evans argues that given the location and description of this mark, the most likely explanation of the mechanics of his fall was offered by Dr. Cindrich who testified that Evans may have initially struck his forehead on a window frame before falling backward and striking his head on the floor.

Along with the testimony set forth above, Cindrich also testified that it was equally conceivable that Evans initially fell backward, sustaining the blow to the back of his head, and then fell forward onto his forehead. His testimony emphasized that it was the blow to the back of Evans' head which caused his disability. At best, Cindrich's testimony is inconclusive on the issue of whether the workplace contributed to Evans' injury.

Nevertheless, Dr. Wilson testified that the mark on Evans' forehead could have been caused by his hat, the bill of which was described as "cocked up" when Evans was found. Evidence militating against a finding that Evans' forehead struck a window frame was offered by co-workers who testified that Evans was found in his injured condition in an open area away from any window frames or objects of any sort.

The Commission found that Evans had failed to prove by a preponderance of the evidence that his injury was causally related to his employment. The Commission held that Evans' fall was caused by circumstances personal to him, an alcohol withdrawal seizure, without any added risk occasioned by his employment. It is axiomatic that we will defer to the findings of the Commission which are supported by substantial, competent though conflicting evidence. *Aldrich v. Lamb–Weston, Inc.*, 122 Idaho 361, 363, 834 P.2d 878, 880 (1992); *In re Sutton*, 83 Idaho at 269, 361 P.2d at 795.

We conclude, after reviewing the record, that substantial and competent evidence supports the Commission's finding of fact that Evans' injury was caused by circumstances personal to him without any risk occasioned by his employment.

## V.

## CONCLUSION

Finding no error, the order of the Industrial Commission is affirmed.

Costs to respondents.

McDEVITT, C.J., BISTLINE, J. and REINHARDT, District Judge (Pro Tem.) concur.

 

JOHNSON, Justice, concurring and concurring in the result.

I concur in the Court's opinion, except part III (The Commission Correctly Applied I.C. § 72–228), as to which I concur in the result. The portion of the Court's rationale for part III in which the Court holds that negative evidence may be considered along with substantial affirmative evidence in evaluating whether substantial evidence has been presented to rebut the statutory presumption appears to me to be in conflict with *Vendex v. Department of Employment,* 122 Idaho 890, 841 P.2d 420 (1992).

In *Vendex,* after rejecting one of the evidentiary grounds for the Commission's decision, the Court vacated the Commission's decision, even though there was other substantial and competent evidence to support the decision. In this case, the Commission found that evidence of Evans' consumption of alcohol and his illness during the three days prior to his injury, "along with the absence of evidence to support any other theory would cause a reasonable mind to accept a conclusion that the Claimant's injury did in fact occur as the result of a seizure."

Considering this finding in light of the portion of I.C. § 72–228 that states, "it shall be presumed, in the absence of substantial evidence to the contrary, that the injury arose out of the employment," causes me to conclude that the Commission improperly relied on the absence of evidence to support any other theory in reaching its conclusion. The "absence of evidence to support any other theory" is not substantial evidence that the injury did not arise out of the employment.

But for *Vendex,* I would have no problem in concurring in the result of part III, because there is substantial evidence that the injury did not arise out of the employment. The reason I am able to concur in the result of part III is that immediately after the Court issued *Vendex,* the Court issued *Darner v. Southeast Idaho In-Home Services,* 122 Idaho 897, 841 P.2d 427 (1992). In *Darner,* after rejecting one of the evidentiary grounds for the Commission's decision, the Court considered alter-native evidence for upholding the decision under the substantial and competent evidence standard.

Although I continue to believe that *Vendex* and *Darner* are irreconcilable, because of the order of their release, I accept *Darner* as controlling. Therefore, I concur in the result of part III.