## IN THE SUPREME COURT OF THE STATE OF IDAHO

### Docket No. 49452

| | | |
|---|---|---|
| In Re: Jeffery Jordan, Decedent. | ) | |
| -------------------------------------------- | ) | |
| SUE JORDAN, | ) | |
| | ) | |
|    Claimant-Respondent, | ) | **Boise, August 2023 Term** |
| | ) | |
| v. | ) | **Opinion Filed: November 29, 2023** |
| | ) | |
| WALMART ASSOCIATES, INC., Employer; | ) | **Melanie Gagnepain, Clerk** |
| NEW HAMPSHIRE INSURANCE COMPANY, Surety, | ) | |
| | ) | |
|    Defendants-Appellants. | ) | |
| _____ | ) | |

Appeal from the Industrial Commission of the State of Idaho.

The decision of the Idaho Industrial Commission is <u>affirmed</u>.

Hawley Troxell Ennis & Hawley, Pocatello, for Appellant. Jetta Mathews argued.

Sue Jordan, Rathdrum, Claimant-Respondent, pro se. Sue Jordan did not appear.

_____

BRODY, Justice

     This appeal involves a worker's compensation claim. Appellants Walmart and New Hampshire Insurance Company appeal the Idaho Industrial Commission's determination that the employee's widow, Sue Jordan, is entitled to medical and death benefits. More specifically, they challenge the Commission's application of the presumption set forth in Idaho Code section 72-228 where there was unrebutted prima facie evidence indicating that the employee's death arose in the course of his employment. For the reasons expressed below, we affirm the decision of the Idaho Industrial Commission.

### I. FACTUAL AND PROCEDURAL BACKGROUND

     Sue Jordan filed a complaint with the Idaho Industrial Commission ("Commission") seeking medical and death benefits for the death of her husband, Jeffrey Jordan. Jeffrey was working overtime at his place of employment, a Walmart tire department, on October 31, 2018, when he collapsed and was taken by ambulance to the hospital. Two days later, Jeffrey died in the

1

hospital from a stroke. In the complaint seeking medical and death benefits, Jordan claimed the nature of the injury was due to job-related "stress."

The Commission received Jordan's complaint on November 1, 2019. After filing their answer, Walmart and New Hampshire Insurance Company (collectively "Walmart") submitted discovery requests and interrogatories on March 20, 2020. Jordan produced three written statements from Jeffrey's co-workers in May 2020, but otherwise did not respond. Jordan also emailed the Commission's support staff, requesting extra time to gather the required documents because of the COVID-19 pandemic, which had resulted in the closure of the Walmart tire department. Nearly four months after the first discovery request, Walmart filed a motion to compel. The Commission granted the motion, warning Jordan that she was required to respond to the discovery requests and file a notice of service of responses to the discovery no later than fifteen days from the order or sanctions may be imposed, "including and up to **DISMISSAL OF THE COMPLAINT**." (Emphasis in original). Jordan failed to comply.

On August 17, 2020, Walmart moved to dismiss Jordan's complaint based on her failure to respond to discovery requests as ordered. On September 14, 2020, the Commission issued an order to Jordan, requiring her to show cause within fourteen days why sanctions, including dismissal of her complaint, should not be ordered. The assigned referee received a voicemail from Jordan on September 30, 2020, requesting a call back:

> Yes, this is Jordan and I'm calling on behalf of my husband, Jefferey Jordan, and I got a letter of [unintelligible] and I got a letter saying it was dismissed because there was no response from me when there was. If you could give me a call back at [phone number] and the case is IC 2019-017748. If you could get back to me, I would appreciate it. Thank you and bye-bye.

The referee then relayed this ex parte communication to all parties via letter and advised Jordan that the referee could not discuss the case unless all parties were present.

On October 26, 2020, Walmart contacted the Commission and inquired about the status of the case. A supervisor with the Commission informed Walmart's counsel that they were reluctant to dismiss a pro se litigant's complaint during the COVID-19 pandemic. Walmart subsequently filed a petition for declaratory relief under Judicial Rule of Practice of Procedure ("JRP") 15, requesting a ruling that no lawful order prevented the dismissal of complaints brought by pro se claimants, and also requesting that the Commission dismiss the complaint because of Jordan's failure to comply with the Commission's Order to Show Cause.

The Commission denied the petition for declaratory relief on the grounds that sanctions, including dismissal, are discretionary with the Commission under JRP 7(C) and 16. The Commission stated that it did not agree with Walmart's position that dismissal was mandatory in this instance. The Commission explained that there were several possible sanctions available to address Jordan's failure to comply with its order, one of which was dismissal. The Commission further explained that it was exercising its discretion in retaining cases during the COVID-19 pandemic, particularly cases with pro se claimants and that additional precautions would be taken to ensure that dismissal was the appropriate sanction:

> There is no doubt that the current pandemic has thrown lives into disarray. Many people are struggling to keep food on the table and a roof over their heads, and it is understandable that the prosecution of a worker's compensation complaint may assume a lower priority than it did in less turbulent times. We are reluctant to take action which will result in dismissal of the complaint of a pro se claimant during the current emergency, and this forbearance is not inconsistent with the many actions of state and federal governments .…

> . . . .

> . . . [I]t is our direction that before entertaining dismissal of a complaint of a pro se claimant, particularly where a dismissal without prejudice is the equivalent of a dismissal with prejudice [in a case where the statute of limitations has lapsed], the Commission must take additional precautions to be assured that dismissal is the appropriate sanction during the current emergency.

The Commission referred Walmart's request back to the referee to determine what sanctions would be appropriate and provided guidance on how the referee could hold a telephone conference with the parties to better understand Jordan's failure to prosecute her case and whether it had anything to do with the pandemic.

The referee held that telephone conference on February 8, 2021. That same day, Walmart requested a hearing date to determine whether Jeffrey's death had been caused by an accident arising out of and in the course of his employment, as defined by Idaho Code section 72-108(18), or was unrelated to the October 31, 2018, accident. A video hearing (over Zoom) was set for June 4, 2021, and a briefing schedule was ordered. Near the deadline for the filing of her reply brief, Jordan sought an extension of time to file her brief, which the referee granted. Despite this extension, Jordan did not file a brief in support of her claim.

At the hearing, Jordan attempted to admit the affidavits of three of Jeffrey's co-workers. The referee excluded this evidence because Jordan had not previously disclosed to Walmart that she would offer those affidavits as exhibits. Walmart then moved for an order excluding any

testimony offered by or on behalf of Jordan because of her failure to comply with the order compelling her to respond to Walmart's discovery requests:

> We received an order compelling discovery from the Commission in this case. No discovery was ever produced. We had filed a petition for declaratory ruling asking the Commission to dismiss the case for failure to comply with the order. The Commission felt like dismissal was not the appropriate remedy, but from the decision the Commission indicated that other remedies could be considered by – by you, Referee Robinson, in terms of the case. So, we would ask – and since that order has been entered I would just indicate no additional discovery has been produced. We have received no medical records. We have received no statements from any physicians establishing a causal link to any industrial incident and – and Mr. Jordan's death and – and we have not received any information about these claims and because we have not received any discovery we would now move that any testimony be excluded. It would be unfair for us to be expected to cross-examine and consider their testimony when the discovery was never provided in this case and I would note – we have not received any notice of any post-hearing depositions of any physicians. We do not have any medical records and where this case will likely turn on a medical opinion regarding causation, we just don't see how that testimony would be appropriately provided to this court. So, we would move to exclude any testimony and ask that – that order be entered.

This was the only sanction motion made by Walmart after the Commission issued its declaratory ruling. Jordan responded that she had attempted to send medical records from the hospital to the Commission. She also explained that she had signed a release of medical information form, providing Walmart authorization to get Jeffrey's medical records, from October 31, 2019, through November 2, 2019, (the date of Jeffrey's death) directly from the hospital. Jordan also explained that there were no medical records prior to that "because he never – he was never even sick to even go to the doctor."

The referee granted Walmart's motion to exclude testimony in part and denied it in part. Jordan was allowed to testify to anything within her personal knowledge but was prohibited from producing any testimony that veered into medical evidence. No other testimony was allowed. Jordan then testified about the events surrounding Jeffrey's stroke on October 31, 2018, and Jordan's awareness of his high blood pressure.

Following the hearing, the referee issued her proposed findings of facts and conclusions of law. The referee noted that it was uncontested that Jeffrey had collapsed while working at Walmart, thereby determining as a matter of law that it was also uncontested that Jeffrey's injury (the stroke) arose in the course of employment. Because of this, and because Jeffrey had died, the referee determined that Idaho Code section 72-228 applied, and Jordan was entitled to the presumption

4

that the "injury arose out of the course of employment." The referee explained that, to rebut the presumption, Walmart was required to produce "substantial evidence that they did not have notice of the accident" or "substantial evidence to the contrary [that the injury arose out of the employment]." Finding that Walmart had notice that Jeffrey had collapsed while working and that this fact was uncontested, the referee concluded that Walmart had notice of the accident. The referee also found that Walmart offered no substantial, affirmative, medical evidence to rebut the presumption but instead presented argument regarding Jordan's untimely filing (these arguments were rejected by the referee and are not raised on appeal) and lack of notice generally. Thus, having failed to provide substantial evidence necessary to overcome the statutory presumption set forth in Idaho Code section 72-228, the referee concluded that Jeffrey's death arose out of and in the course of employment, and Jordan was entitled to death and medical benefits. The referee filed the proposed decision with the Commission for review.

The Commission agreed with the referee's ultimate conclusion but declined to adopt her decision, instead issuing its own findings and conclusions. The Commission determined that it was uncontested that Jeffrey had "suffered a massive hemorrhagic stroke and collapsed at work" in the course of his employment at Walmart and that Jeffrey had died. The Commission concluded that Jordan was "entitled to the presumption that the accident was also one arising out of his employment." The Commission explained that Walmart "misapprehend[ed] the burden of adducing substantial affirmative medical evidence tending to prove that Decedent's death is related to a non-industrial cause."

The Commission also explained that Walmart sought the hearing to determine the cause of Jeffrey's injury without first obtaining any substantial evidence necessary to rebut the presumption that the accident which arose in the course of employment also arose out of that employment. Recognizing that the application of Idaho Code section 72-228 was not addressed by any party in this case, the Commission explained that Walmart's request for a determination on the issue of causation could not be sufficiently answered without a consideration of the statutory rules that address the burdens of production and persuasion in cases such as this. The Commission held that, because consideration of section 72-228 is not a new theory of recovery or an affirmative defense but rather is a rule of law applicable to Jordan's claim, the application of the statute was necessary to the determination of the issues raised by Walmart in its request for a hearing.

5

The Commission chided Walmart's decision to take this case to a hearing before gathering evidence and without properly considering the impact of Idaho Code section 72-228 on the case:

> The application of the provision of Idaho Code § 72-228 to the facts of this case does not appear to have been anticipated by Defendants, but it should have been, inasmuch as consideration of Idaho Code § 72-228 is requisite to the first issue raised by Defendants in their request for calendaring: "whether Claimant's [sic] death was caused by an accident arising out of and in the course of employment as defined by Idaho Code 72-102(18) [sic]." Even so, Defendants failed to consider the impact of the circumstances of Decedent's death on the question of who bears the burden of proving the "course" and "arising" components of the case. The Dissent has argued that to burden Defendants with this outcome is unfair in view of the considerable leniency shown by the Commission to Claimant in almost every other aspect of this case. However, it is Defendants who requested that this matter be set for hearing. Between the February 8, 2021 status conference and the June 4, 2021 hearing, Defendants took no further action to obtain discovery responses or, failing that, some sanction (including dismissal) for Claimant's failure to respond. . . . Defendants made the tactical judgment to request that this matter be set for hearing, and they also declined to initiate any further pursuit of discovery responses from Claimant prior to hearing. At hearing, they obtained a favorable ruling preventing Claimant from putting on any medical evidence in support of her claim. Defendants having chosen this path forward, the Commission is not inclined to remand this matter to the Referee for further treatment of outstanding discovery requests, or dismissal of the Complaint, as has been suggested by the Dissent.

(Internal citation omitted). The Commission concluded that Jeffrey's death arose from, and occurred in the course of, his employment and therefore Jordan was entitled to death benefits and any medical benefits related to Jeffrey's death. Walmart timely appealed.

## II. STANDARDS OF REVIEW

"When this Court reviews a decision from the Industrial Commission, it exercises free review over questions of law but reviews questions of fact only to determine whether substantial and competent evidence supports the Commission's findings." *Deon v. H & J, Inc.*, 157 Idaho 665, 667, 339 P.3d 550, 552 (2014). The correctness of the Commission's application of Idaho Code section 72-228 is a question of law. *Politte v. Dep't of Transp.*, 126 Idaho 270, 272, 882 P.2d 437, 439 (1994); *Evans v. Hara's, Inc.*, 123 Idaho 473, 475, 849 P.2d 934, 936 (1993). Generally, when reviewing cases under section 72-228, this Court's task is to determine whether there is substantial evidence contrary to the presumption that the injury arose out of the employee's employment," which is an evidentiary burden borne by the employer. *Politte*, 126 Idaho at 272, 882 P.2d at 439. .

6

Whether the employee suffered an industrial accident is a factual determination for the Commission, which this Court will uphold if it is supported by substantial and competent evidence. *Id*. "[I]f there is doubt surrounding whether the accident in question arose out of and in the course of employment, the matter will be resolved in favor of the employee." *Id*. (quoting *Spivey v. Novartis Seed Inc.,* 137 Idaho 29, 33, 43 P.3d 788, 792 (2002)).

## III. ANALYSIS

### A. The Industrial Commission did not err in concluding that Jordan was entitled to death and medical benefits.

Walmart contends that the Commission erred in concluding Jordan was entitled to death and medical benefits because Jordan did not meet her burden in establishing all elements for a workers' compensation claim. Walmart raises two arguments in support of this contention: (1) Jordan failed to prove that Jeffrey suffered an industrial accident resulting in a compensable injury, and (2) the Commission raised a new theory of recovery on Jordan's behalf by sua sponte applying the statutory presumptions contained in Idaho Code section 72-228. For the reasons explained below, we reject each of these arguments.

### 1. Jordan met her burden of proving an industrial accident resulting in a compensable injury.

To recover workers' compensation benefits, the claimant carries the burden of establishing that he suffered both (1) an industrial *accident* and (2) a compensable *injury* resulting from that accident. *See Serrano v. Four Seasons Framing*, 157 Idaho 309, 317, 336 P.3d 242, 250 (2014).. An accident is "an unexpected, undesigned, and unlooked for mishap, or untoward event, connected with the industry in which it occurs, and which can be reasonably located as to time when and place where it occurred, causing an injury." I.C. § 72-102(17)(b).

A compensable injury is "a personal injury caused by an accident *arising out of* and *in the course of* any employment covered by the worker's compensation law." I.C. § 72-102(17)(a) (emphasis added). An injury is deemed to *arise out of* the employment when "a causal connection is found to exist between the circumstances under which the work must be performed and the injury of which the claimant complains." *Hamilton v. Alpha Services, LLC*, 158 Idaho 683, 689, 351 P.3d 611, 617 (2015) (quoting *Dinius v. Loving Care & More, Inc*, 133 Idaho 572, 575, 990 P.2d 738, 741 (1999)). An injury is deemed to be *in the course of* employment when it occurs while the worker is engaged in employment duties. *Dinius.*, 133 Idaho at 575, 990 P.2d at 741.

7

Thus, a compensable injury includes an injury caused by an accident (as defined above), "which results in violence to the physical structure of the body." I.C. § 72-102(17)(c).

Walmart argues that Jordan failed to prove that the stroke resulted from an industrial accident because there was no evidence that the stroke is "connected with the industry in which it occur[red]." I.C.§ 72-102(17)(b). Walmart contends Jordan failed to present evidence—and the Commission made no finding—that there was an industrial accident that resulted in "violence to the physical structure of the body." I.C.§ 72-102(17)(c). We disagree.

This Court has previously held that a stroke occurring while the employee was engaged in employment duties *is* an industrial accident resulting in a compensable injury. *See Lewis v. Dep't of L. Enf't*, 79 Idaho 40, 45, 311 P.2d 976, 978-79 (1957) (explaining that a compensable injury does not require "violence" but is determined by whether the workplace labor aggravated or accelerated a pre-existing condition, or caused or contributed to the injury); *see also Politte*, 126 Idaho at 271, 273, 882 P.2d at 438, 440 (upholding the Commission's award of worker's compensation benefits for an employee who suffered a stroke). Although this Court's decision in *Lewis* predates the 1971 modification of Idaho's worker's compensation law, the definitions of "accident" and "injury" have remained unchanged since the terms were first added as part of "The Occupational Disease Compensation Law," Idaho Code section 43-1001, added in 1939, ch. 161, sec. 1, p. 286. Here, the Commission was presented uncontested evidence that Jeffrey collapsed from a stroke while working overtime at a Walmart tire center performing employment duties. Thus, per our holdings in *Lewis* and *Politte*, the record establishes that Jeffrey suffered an industrial accident resulting in a compensable injury.

   2. *The Industrial Commission did not raise a new theory of recovery on Jordan's behalf because the application of Idaho Code section 72-228 is inherent to Jordan's claim and the issue of causation.*

Walmart argues that the Commission's decision to apply the statutory presumption set forth in Idaho Code section 72-228 violated this Court's holding in *Deon v. H & J., Inc.*, which bars the Commission from raising new theories of recovery sua sponte. 157 Idaho 665, 671, 339 P.3d 550, 556 (2014). Because this statutory presumption was never raised or addressed by the parties but first arose in the referee's decision, Walmart argues it had no notice that Jordan would "raise the statute as part of her prima facie burden of proof" or that the Commission would "advocat[e] in [Jordan's] stead." Walmart contends that, as a result of the Commission's application of this statute, it was denied its right to a neutral decision maker. Walmart misconstrues our holding in

*Deon*, and we reject the contention that Walmart was denied a neutral decision maker where the Commission's application of the statute was correct as a matter of law.

Section 72-228 of the Idaho Code provides a statutory presumption in favor of a workers' compensation claimant when the injured worker has been killed and his injury is shown to have arisen in the course of employment:

> In any claim for compensation, where the employee has been killed, or is physically or mentally unable to testify, and where there is unrebutted prima facie evidence that indicates that the injury arose in the course of employment, it shall be presumed, in the absence of substantial evidence to the contrary, that the injury arose out of the employment and that sufficient notice of the accident causing the injury has been given.

I.C. § 72-228. If the claimant submits prima facie evidence to satisfy the first prong of the test—that the injury arose *in* the course of employment, that gives rise to a rebuttable presumption that satisfies the second prong of the test—that the claimant's injury arose *out* of his employment. The burden then shifts to the employer to present substantial evidence to the contrary. *Id*.; *Seamans v. Maaco Auto Painting & Bodyworks*, 128 Idaho 747, 753, 918 P.2d 1192, 1198 (1996); *Evans*, 123 Idaho at 478, 849 P.2d at 939. To overcome the rebuttable presumption that an injury arose out of the worker's employment, the employer must submit affirmative medical proof. *Nelson v. Pocatello*, 170 Idaho 160, 173, 508 P.3d 1234, 1247 (2022); *Politte*, 126 Idaho at 273, 882 P.2d at 440.

In this case, the Commission correctly recognized that the undisputed fact that Jeffrey collapsed while working in the Walmart tire department and later died from that stroke triggered the application of the rebuttable presumption set forth in Idaho Code section 72-228. Contrary to Walmart's assertion, section 72-228 is not a theory of recovery or an affirmative defense. Instead, it is the law that applies to Jordan's claim. It establishes which party has the burden of production and the burden of persuasion under the circumstances referenced within the statute.

Our conclusion that section 72-228 is a rule of law rather than a theory of recovery is borne out by our decision in *Evans v. Hara's, Inc.,* 123 Idaho 473, 478, 849 P.2d 934, 939 (1993). In that case Evans sustained a serious head injury as a result of a fall that occurred while he was working at Hara's, Inc. *Id.* at 475, 849 P.2d at 936. The fall resulted in a skull fracture and brain hemorrhage, requiring surgery. *Id*. at 475–76, 849 P.2d at 936–37. Following surgery, Evans was left permanently disabled and unable to communicate. *Id*. at 476, 849 P.2d at 937. At a subsequent workers' compensation hearing, the Commission's referee applied Idaho Code section 72-228,

finding that it was undisputed that Evans was physically unable to testify, and that Evans' injury arose out of his employment. *Id*. at 477, 849. P.2d at 938. However, Hara's presented substantial, affirmative, medical evidence that: (1) Evans was an alcoholic who had a history of alcohol withdrawal seizures; (2) that such seizures resulted in Evans falling and striking his head on the ground and/or nearby furnishings, (3) that Evans had suddenly reduced his alcohol intake prior to the fall, and (4) that Evans' head injuries caused by the fall were consistent with injuries that would be suffered during an alcohol withdrawal seizure. *Id*. at 476–79, 849 P.2d at 937–40. Likewise, Hara's presented evidence that Evans had not fallen from any height and that there was nothing unusual about his work environment that day such as to create a risk of fall or a head injury. *Id*. Based on this evidence, the Commission found that Hara's had presented substantial evidence sufficient to rebut the presumption that Evans' injury arose out of his employment and thereby denied Evans's claim. *Id.* at 478–79, 849 P.2d at 939–40.

On appeal, Evans argued that the Commission had erred by assigning him the burden of persuasion in challenging Hara's evidence. *Id*. at 478, 849 P.2d at 939. We affirmed the Commission's decision, distinguishing the burden of production from the burden of persuasion, concluding that "once the employer has come forward with substantial affirmative evidence to indicate that the accident did not arise out of the employment, the burden shifts back to the employee to persuade the Commission that it did indeed arise out of the employment." *Id*. at 478, 849 P.2d at 939.

Most relevant to this case, this Court also stated in *Evans* that, where it was undisputed that (1) Evans was physically unable to testify and (2) his injury arose in his employment, the Commission was *required to* apply the statutory presumption contained in Idaho Code section 72-228 that the injury also arose out of the employment. *Id*. When the presumption applies, the employer bears the burden of producing substantial, affirmative, medical evidence that the accident did not arise out of the course of employment. If the employer fails to meet its burden of production, then the claimant prevails. I.C. § 72-228. But if the employer meets its burden of production, as in *Evans*, the burden of persuasion that the injury arose out of the employment shifts back to the claimant.

Walmart argues that *Evans* is not applicable to this case because in that case Evans raised the statutory presumption of Idaho Code section 72-228 himself whereas it was the Commission who raised the statute's application here. But *Evans is* applicable. *Evans* discusses the purpose of

the statutory presumption—namely, that Idaho Code section 72-228 is a mandatory rule of law assigning the burdens of production and persuasion for establishing causation in workers' compensation claims when the undisputed facts show that claimant has died (like Jeffrey here) or is physically or mentally unable to testify (like Evans). Thus, in applying the rule of law articulated in *Evans*, we hold that it is irrelevant who first raises Idaho Code section 72-228 in a workers' compensation claim.

Walmart's actions in requesting the hearing to determine whether Jeffrey's death had been caused by an accident arising out of and in the course of his employment, and agreeing that Jeffrey's collapse occurred while he was engaged in his employment duties, left the Commission no choice but to apply section 72-228. In fact, the Commission was *required* to do so to resolve the issues raised. While Jordan always bore the burden of persuasion in demonstrating that Jeffrey's injury arose out of and in the course of his employment, Jordan met this burden by presenting the undisputed facts that Jeffrey had collapsed while working and subsequently died. The burden of production then shifted to Walmart to overcome the rebuttable presumption by producing substantial, affirmative, medical evidence that the injury had not arisen in the course of employment. Walmart failed to meet its burden.

Contrary to Walmart's assertion, our holdings in *Deon v. H & J., Inc*. 157 Idaho 665, 671, 339 P.3d 550, 556 (2014), and *Heitz v. Carroll*, 117 Idaho 373, 788 P.2d 188 (1990), are not applicable to this case. *Deon* is not applicable because the Commission did not sua sponte raise an affirmative defense (like collateral estoppel) to a claimant's allegation of the employer's total liability. 157 Idaho at 669-71, 339 P.3d at 554-56. Likewise, *Heitz* is not applicable because the Commission did not sua sponte raise a new theory of recovery to enable Jordan to retry her case with an additional claim or a new cause of action. 117 Idaho at 378, 788 P.2d at 193.

To be clear, Idaho Code section 72-228 does not present an alternative theory of recovery for claimants in workers' compensation cases. Rather, it is a rule of law establishing the burdens of production and persuasion in workers' compensation cases, as explained above. The application of section 72-228's presumption—namely, that Jeffrey's death arose out of his employment—was inherent in Jordan's claim for medical and death benefits, given the undisputed facts that Jeffrey's collapse occurred at work and that he subsequently died.

Walmart further argues that affirming the Commission's application of Idaho Code section 72-228 would result in "almost no limit to the role the Commission could play in advocating on

11

behalf of one party or the other," suggesting that the Commission would be allowed to spontaneously apply the statute of limitations even if not raised. We reject this argument. Invocation of the statute of limitations is different because it is an affirmative defense that must be raised by a party or else is waived. *See Rivera v. Johnston,* 71 Idaho 70, 75, 225 P.2d 858, 860-61 (1950).

Likewise, we also reject Walmart's argument that Idaho Code section 72-228 is similar to Idaho Code section 12-120(3), in which attorney fees shall be granted to a prevailing party but only when the party has specifically requested them. Recovery of attorney fees is an additional theory of monetary recovery above and beyond the damages sought for the claims pleaded in the complaint. *See generally Indep. Lead Mines Co. v. Hecla Mining Co.*, 143 Idaho 22, 20, 137 P.3d 409, 416 (2006); *Stephen v. Sallaz & Gatewood, Chtd.*, 150 Idaho 521, 530, 248 P.3d 1256, 1265 (2011). In this case, the Commission's application of section 72-228 did not result in an award of any additional medical or death benefits not noticed to Walmart by Jordan's original claim and did not raise a new theory of monetary recovery. Rather, Idaho Code section 72-228 is more like Idaho Code section 12-102, in conjunction with Idaho Rule of Civil Procedure 54(d)(1)(A) and (C), which provides costs to a prevailing party as a matter of right. "Because costs are awarded as a matter of right a party need not raise the issue in their opening brief on appeal or provide the Court with citation and authority authorizing costs in order to be awarded costs on appeal." *Mulford v. Union Pac. R.R.*, 156 Idaho 134, 142, 321 P.3d 684, 692 (2014). Just as a party need not specifically request costs on appeal to recover those costs as a prevailing party, neither must a workers' compensation claimant specifically raise Idaho Code section 72-228 to be entitled to its presumption when the undisputed facts presented give rise to its application as a matter of law.

As explained above, Idaho Code section 72-228 is neither an affirmative defense nor a new theory of recovery but is instead a mandatory rule of law inherent to the noticed issues—issues raised by Walmart in its request for a hearing. By agreeing that Jeffrey had collapsed while working, combined with the inescapable fact that Jeffrey had died, Walmart was or should have been on notice of Idaho Code section 72-228's applicability to this case. More specifically, once Walmart requested the hearing to resolve whether the injury arose out of Jeffery's employment, it was bound by the presumption in section 72-228. We therefore hold that the Commission did not err in applying Idaho Code section 72-228 to Jordan's case**.**

12

**B. Jordan is not estopped from relying on section 72-228 because any prejudice to Walmart was the result of its own conduct and misunderstanding of the applicable law.**

Walmart argues that "[e]ven if the Commission were allowed to apply section 72-228 sua sponte, it is unjust and inequitable to do so here because Claimant's own actions prevented Defendants from rebutting it." Walmart argues that it was prevented from rebutting the statutory presumption of section 72-228 because Jordan's failure to respond to discovery requests left it with no access to pertinent medical records. Thus, Walmart argues the laws of equity and justice should prevent Jordan from relying on section 72-228 to win her claim.

Walmart cites a variety of authorities to argue for justice and equity. It first references Idaho Code section 15-2-803(n), otherwise known as "Idaho's slayer statute," which bars a murderer from profiting from the death of his victim. It appears that Walmart is attempting to analogize Jordan's failure to respond to discovery requests with a murderer retaining property or benefits as a result of the death of his victim, or Walmart may be equating a person who spoils evidence to a murderer. But such analogies fail here. No one alleges that medical records were destroyed, much less that Jordan destroyed them. Failure to respond to discovery requests is not on par with the intentional destruction of medical records or murder.

Walmart next cites Idaho Rules of Evidence 804(a)(5) and (b)(5), which provide an exception to the hearsay rule when a proponent wrongfully causes the unavailability of a witness. Again, this rule of evidence is irrelevant here. This case does not involve a hearsay question, and no one alleges Jordan wrongfully made a witness unavailable. While Jordan's failure to respond to discovery requests was improper, her actions did not prevent Walmart from obtaining Jeffrey's medical information by other means. Walmart could have obtained Jeffrey's medical records from the hospital by using the signed medical release form Jordan had provided, it could have requested the referee issue subpoenas to medical providers for the records, or it could have obtained the medical records through additional motion practice before the referee. Walmart never exercised these options.

As a final argument on the issue of equity, Walmart invokes the clean hands doctrine, which provides that "'a litigant may be denied relief by a court of equity on the ground that his conduct has been inequitable, unfair and dishonest, or fraudulent and deceitful as to the controversy in issue.'" *Kirkman v. Stoker*, 134 Idaho 541, 544, 6 P.3d 397, 400 (2000) (quoting *Gilbert v. Nampa Sch. Dist. No.* 131, 104 Idaho 137, 145, 657 P.2d 1, 9 (1983)). The clean hands

13

doctrine is a principle of equity invoked to promote public policy and protect the integrity of the courts. *See Gilbert*, 104 Idaho at 145, 657 P.2d at 9. It is not "a judicial strait jacket . . . to repel all sinners from a court of equity, nor does it apply to every unconscientious act of a party[]." *Id*. at 145–46, 657 P.2d at 9–10 (quoting 30 C.J.S. Equity § 98 (1965)). "[E]quity will consider the conduct of the adversary, the requirements of public policy, and the relation of the misconduct to the subject matter of the suit and to [the] defendant." *Id*. at 146, 657 P.2d at 10 (alterations omitted) (quoting 30 C.J.S. Equity § 98 (1965)).

Here, Jordan's failure to respond to discovery requests and the Order to Show Cause does not amount to fraudulent, deceitful, or dishonest conduct. This Court did not apply the clean hands doctrine in *Kirkman*, or in *Gilbert*, and we decline to do so here. While failure to respond fully to discovery requests and an order to show cause is likely dilatory, application of the clean hands doctrine is not an appropriate remedy absent a showing of intentional misconduct in a court of equity. Instead, the proper remedy may be a motion for sanctions.

Although Walmart initially moved for sanctions in August 2020 and moved for a declaratory judgment in October 2020, it dropped the issue once the Commission decided against mandatory dismissal and referred the issue back to the referee to determine whether the pandemic had anything to do with Jordan's failure to prosecute her case and to determine precisely what sanctions, if any, were appropriate. Instead of pursuing the matter further with the referee, Walmart requested a hearing to resolve the issue of causation. Walmart was not required to request this hearing. Walmart had several alternative methods to defend against Jordan's workers' compensation claim: (1) do nothing and wait to see what Jordan (who, as Walmart readily admits, was failing to prosecute her case) would do; (2) establish with the referee that Jordan's failure to answer discovery had nothing to do with the pandemic and renew its motion for sanctions in light of this showing; (3) depose Jordan to ask about Jeffrey's medical history and providers; (4) request the referee issue subpoenas so Walmart could obtain Jeffrey's medical records from medical providers; (5) use the signed release that Jordan provided to obtain Jeffrey's medical records from the hospital; or (6) notice the claim for hearing. Walmart chose the last option, despite having no evidence to rebut the presumption provided by Idaho Code section 72-228.

At the hearing, the only sanction Walmart requested was the exclusion of any offered testimony, which the referee largely granted by excluding the three affidavits of Jeffrey's co-workers and limiting Jordan's testimony to information within her own personal knowledge.

14

Walmart argues that this was not a sanction at all because the referee already excluded those affidavits due to Jordan's failure to notify Walmart that she intended to use them at the hearing. However, Walmart's argument here misses the point: Walmart did not ask for any other sanction; thus, the referee had no obligation to impose one on Jordan.

Moreover, Jordan did not testify to any additional prejudicial facts not already noticed to Walmart. The only facts testified to by Jordan and relied upon by the referee and Commission in their decisions were facts Walmart did not dispute: that Jeffrey collapsed from a stroke while working overtime at the Walmart tire department and that Jeffrey died two days later in the hospital from that stroke. These facts were enough for the Commission to apply Idaho Code section 72-228's presumption that Jeffrey's death arose out of his employment, thereby entitling Jordan to death and medical benefits.

We agree with the Commission that this case presents a clear example of misapprehending applicable law. Walmart requested the hearing on the mistaken belief that Jordan's claim would be dismissed as untimely or for failure to prove causation of Jeffrey's injury, without considering the presumptions in Idaho Code section 72-228. Any prejudice Walmart believes it suffered due to the Commission's application of the statutory presumption in Jordan's favor is thus primarily the result of its own decisions in handling this case. The Commission did not err in applying Idaho Code section 72-228.

## IV. CONCLUSION

The Commission's decision is affirmed. Although the prevailing party, Jordan is not entitled to costs because she did not make an appearance in this appeal.

Chief Justice BEVAN, and Justices STEGNER and ZAHN CONCUR.

Justice Moeller sat for oral argument, but did not participate in the Opinion.

15